IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 23, 2003

## NATIONAL INSURANCE ASSOCIATION v. KATHERINE MICHELLE SIMPSON, ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 01-3395CV     Robert E. Corlew, III, Chancellor**

_____

**No. M2002-03109-COA-R3-CV - Filed June 7, 2004**

_____

This appeal involves a dispute regarding an exclusion from liability coverage in an automobile insurance policy for family members. Following a collision injuring its insured's half brother, the insurer filed suit in the Chancery Court for Rutherford County seeking a declaratory judgment that the exclusion applied to the half brother's claims against the insured. Following a bench trial, the trial court determined that the exclusion did apply to the half brother's claims. Both the insured and her half brother have appealed. We affirm the trial court's construction of the insurance policy.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

L. Gilbert Anglin and Robert O. Bragdon, Murfreesboro, Tennessee, for the appellants, Katherine Michelle Simpson and David Franklin.

David B. Scott, Nashville, Tennessee, for the appellee, National Insurance Association.

**OPINION**

**I.**

Katherine Simpson and David Franklin have the same biological mother. They were adopted by different families when they were very young and grew up apart. They were reunited in 1992 after being separated for seventeen years. Over the next seven years, Mr. Franklin resided with Ms. Simpson on three separate occasions.

In March 1999, Mr. Franklin had been residing with Ms. Simpson for twelve out of the past thirteen months. They were living in a five-bedroom house that Ms. Simpson and her estranged husband had leased. Their older brother also lived with them, along with Ms. Simpson's three children and a female ward. Ms. Simpson and her two brothers split the rent equally and shared their common living expenses. They had their own bedrooms but shared the other common areas of the house and also participated in the cooking and other household chores. Mr. Franklin viewed Ms. Simpson as a "mother figure," and Ms. Simpson explained that "[w]e didn't really grow up together

and we all wanted to get to know each other, and we just matched together like that. But we helped each other out so we could get to know each other again, because we got separated when we were really young."

Ms. Simpson regularly gave Mr. Franklin rides to and from work because he did not own an automobile. On March 4, 1999, Ms. Simpson and Mr. Franklin were riding in Ms. Simpson's Jeep when it was struck by a tractor trailer truck at an intersection. Mr. Franklin was injured and spent one week in the hospital with a contusion to the brain, four fractured ribs, a bruised kidney, and broken bones in his right forearm. Following his release from the hospital, Mr. Franklin returned to the house where Ms. Simpson and their brother had been living and remained living there for approximately one year. Ms. Simpson cared for him while he was convalescing.

On March 3, 2000, Mr. Franklin filed suit in the Circuit Court for Rutherford County seeking to recover damages from the owner and driver of the truck that had collided with Ms. Simpson and from Ms. Simpson herself. When Ms. Simpson was informed that Mr. Franklin had sued her, she asked him to move out of the house.

Ms. Simpson was insured by National Insurance Association ("National Insurance") when the collision occurred. Her policy contained a standard provision excluding both the insured and the insured's family members from liability coverage. On October 11, 2001, National Insurance filed a declaratory judgment action in the Chancery Court for Rutherford County seeking a determination that its policy excluded Mr. Franklin's claim against Ms. Simpson and that it had no duty to defend Ms. Simpson in the action filed against her by Mr. Franklin. Both Ms. Simpson and Mr. Franklin responded by asserting that the policy's exclusion did not apply to Mr. Franklin's claim.

The trial court conducted a bench trial and, on September 12, 2002, mailed the parties a letter stating that it had determined that the exclusion for family members in Ms. Simpson's policy applied to Mr. Franklin's claim because he had been residing with her when the accident occurred. On November 20, 2002, the trial court filed an order declaring that Mr. Franklin's claim was excluded from coverage and that National Insurance did not have a duty to defend Ms. Simpson against Mr. Franklin's claim. Both Ms. Simpson and Mr. Franklin appealed.

## II.

The sole issue on this appeal concerns whether the "family members" exclusion from liability coverage in Ms. Simpson's automobile insurance policy applies to Mr. Franklin's claim. Mr. Franklin insists that the trial court erred by applying the exclusion to his claim because he was not a resident of Ms. Simpson's household when the collision giving rise to his injuries occurred. We have determined that the trial court's conclusion that Mr. Franklin was a resident of Ms. Simpson's household when he was injured was correct.

## A.

The courts interpret insurance policies using the principles that guide the construction of other contracts. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000); *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 20 (Tenn. Ct. App. 2002); *Williams v. Berube &*

*Assocs.*, 26 S.W.3d 640, 643 (Tenn. Ct. App. 2000). The principle goal is to ascertain and to enforce the intent of the contracting parties. *Harrell v. Minn. Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996); *Setters v. Permanent Gen. Assurance Corp.*, 937 S.W.2d 950, 953 (Tenn. Ct. App. 1996). The parties' intent, and therefore the meaning of the contract, should be derived from the provisions in the insurance policy itself. *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994).

Insurance policies should be construed as a whole in a reasonable and logical manner. *English v. Virginia Sur. Co.*, 196 Tenn. 426, 430, 268 S.W.2d 338, 340 (1954); *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998). Their terms should be given their natural and ordinary meaning. *Allstate Ins. Co. v. Barnes*, 896 S.W.2d 565, 568 (Tenn. Ct. App. 1995); *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). When the terms of an insurance policy are clear, the courts must avoid favoring one party or the other, *Brown v. Tenn. Auto. Ins. Co.*, 192 Tenn. 60, 63, 237 S.W.2d 553, 554 (1951); *Victoria Ins. Co. v. Hawkins*, 31 S.W.3d 578, 580 (Tenn. Ct. App. 2000), and must avoid construing the policy in a way that would extend or restrict the intended scope of coverage. *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001).

Clauses excluding coverage should be strictly construed against the insurer but in light of their apparent purpose. *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991); *Tennessee Farmers Mut. Ins. Co. v. Moore*, 958 S.W.2d 759, 763 (Tenn. Ct. App. 1997); *Dressler v. State Farm Auto. Ins. Co.*, 52 Tenn. App. 514, 518, 376 S.W.2d 700, 702 (1963). When the purpose of an exclusion can be ascertained, the courts should avoid construing the language of the exclusion so narrowly that its purpose is undermined. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d at 8. [1]

Questions relating to the interpretation of written contracts involve legal rather than factual issues. *Brandt v. Bib Enters., Ltd.*, 986 S.W.2d 586, 592 (Tenn. Ct. App. 1998); *Rapp Constr. Co. v. Jay Realty Co.*, 809 S.W.2d 490, 491 (Tenn. Ct. App. 1991). Insurance policies are contracts, and thus scope of coverage issues present questions of law. *Pile v. Carpenter*, 118 Tenn. 288, 296, 99 S.W. 360, 362 (1907); *Pa. Lumbermens Mut. Fire Ins. Co. v. Holt*, 32 Tenn. App. 559, 566, 223 S.W.2d 203, 206 (1949). A declaratory judgment proceeding is an appropriate vehicle for deciding coverage questions, *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d at 5, and, when the relevant facts are not in dispute, the legal issues regarding a policy's coverage may be resolved by summary judgment. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 834 (Tenn. 1994); *Allstate Ins. Co. v. Jordan*, 16 S.W.3d 777, 779 (Tenn. Ct. App. 1999).

---

[1]Clauses such as the one involved in this case are not contrary to public policy. *Setters v. Permanent Gen. Assurance Corp.*, 937 S.W.2d at 953. Their purpose is to safeguard the insurance company against the natural partiality of an insured to assist injured persons who are family members. *Dressler v. State Farm Mut. Auto. Ins. Co.*, 52 Tenn. App. at 520, 376 S.W.2d at 702; 6C JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4411, at 345-46 (rev. vol. 1979) ("APPLEMAN").

**B.**

Ms. Simpson's automobile insurance policy explicitly excludes from liability coverage "bodily injury to you or any family member." It defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." There is no dispute that Ms. Simpson and Mr. Franklin are related by blood. Therefore, the pivotal question is whether Mr. Franklin was a resident of Ms. Simpson's household when he received his injuries.

The phrase "resident of your household" and similar phrases appear often in insurance contracts. APPLEMAN § 4411. They have been construed frequently and are not ambiguous. *Setters v. Permanent-General Assurance Corp.*, 937 S.W.2d at 954; *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d at 915. However, courts have recognized that these phrases are necessarily elastic because of the numerous factual settings to which they apply. *Montgomery v. Hawkeye Security Ins. Co.*, 217 N.W.2d 449, 450-51 (Mich. Ct. App. 1974); *Schehen v. North-West Ins. Co.*, 484 P.2d 836, 838 (Or. 1971).

Residence in a household contemplates both a relationship to a place and membership in a group. *Allstate Ins. Co. v. Barnes*, 896 S.W.2d at 569; *State Farm Mut. Ins. Co. v. Thomas*, 699 S.W.2d 156, 157-58 (Tenn. Ct. App. 1983); *Am. States Ins. Co. v. Walker*, 486 P.2d 1042, 1044 (Utah 1971). It includes the common types of close relationships, varying greatly in detail, where persons live together as a family in a closely knit group, usually because of close relationship by blood, marriage, or adoption and deal with each other intimately, informally, and not at arm's length. *Quinlan v. Coombs*, 314 N.W.2d 125, 127 (Wis. Ct. App. 1981).

Earlier definitions of "household" limited its application to groups of persons living together "under one head." *Boyd v. Peoples Protective Life Ins. Co.*, 208 Tenn. 280, 286, 345 S.W.2d 869, 872 (1961). However, the legal significance of *paterfamilias* has given way in modern times to a broader concept of family. The courts cannot force people to live in narrowly defined family patterns. We now recognize that "[o]ut of choice, necessity, or a sense of family responsibility, it has been common for close relatives to draw together and participate in the duties and satisfactions of a common home." *Moore v. City of E. Cleveland*, 431 U.S. 494, 505, 97 S. Ct. 1932, 1938 (1977). Thus, the prevailing understanding of "household" today does not necessarily require the existence of a family head. For the purposes of this opinion, we, like a majority of jurisdictions, recognize a household as a group or set of persons who dwell together as a family under the same roof.[2]

Residence in a household also requires a degree of permanence and intention to remain in the household for an indefinite period of time. It connotes a settled or permanent status. Thus, a temporary visit by a relative does not make the relative a resident of the household because it is

---

[2] *E.g., Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 768-69 (5th Cir. 1995); *Am. Liberty Ins. Co. v. Carpenter*, 547 So. 2d 402, 403 (Ala. 1989); *Sutton v. Shelter Mut. Ins. Co.*, 971 S.W.2d 807, 808 (Ky. Ct. App. 1997); *Jones v. Crane Co.*, 653 So. 2d 822, 825 (La. Ct. App. 1995); *Merrimack Mut. Fire Ins. Co. v. McDill*, 674 So. 2d 4, 9 (Miss. 1996); *Shivvers v. Am. Family Ins. Co.*, 589 N.W.2d 129, 135 (Neb. 1999); *Minor v. Allstate Ins. Co.*, 675 N.E.2d 550, 553 (Ohio Ct. App. 1996); *see also* 7 THE OXFORD ENGLISH DICTIONARY 442 (2d ed. 1989).

temporary and there is no melding of the family unit. *State Farm Mut. Auto. Ins. Co. v. Smith*, 142 S.E.2d 562, 565-66 (Va. 1965). Likewise, a landlord-tenant relationship or a simple roommate arrangement does not create a household. *Great Am. Ins. Co. v. Marshall*, 266 F. Supp. 208, 211 (D.S.C. 1967); *Universal Underwriters Ins. Co. v. Evans*, 565 So. 2d 741, 743 (Fla. Dist. Ct. App. 1990); *Shivvers v. Am. Family Ins. Co.*, 589 N.W.2d at 136.

Over the years, the courts have examined a number of factors to determine whether a person is a resident of a household. These factors include, but are not limited to: (1) the person's subjective or declared intent to remain in the household either permanently or for an indefinite or unlimited period of time, (2) the formality or informality of the relationship between the person and the other members of the household, (3) whether the place where the person lives is in the same house or on the same premises, (4) whether the person asserting residence in the household has another place of lodging, and (5) the age and self-sufficiency of the person alleging to be a resident of the household. *E.g., AMCO Ins. Co. v. Rossman*, 518 N.W.2d 333, 335 (Iowa 1994); *Hartman v. Ins. Co. of N. Am.*, 308 N.W.2d 625, 630 (Mich. Ct. App. 1981); *Amco Ins. Co. v. Norton*, 500 N.W.2d 542, 547 (Neb. 1993); *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d at 914; *State Farm Mut. Auto. Ins. Co. v. Thomas*, 699 S.W.2d at 158.

**C.**

Ms. Simpson, Mr. Franklin, and their older brother considered themselves a family. They decided to live together to renew their family relationship and to share expenses. They lived together in the same house, and during all relevant times, this house was their only dwelling place. The record contains no evidence that any of the siblings considered the arrangement to be temporary. Even though Mr. Franklin had his own entrance and bedroom, the house was not divided into separate living quarters. All its inhabitants shared the living room, dining room, and other common areas of the house. They shared the household expenses, and they cooked and ate many of their meals together.

In light of these facts, we conclude that the trial court did not err by finding that Mr. Franklin was a resident of Ms. Simpson's household when he was injured on March 4, 1999. Accordingly, the trial court correctly determined that Mr. Franklin's claim against Ms. Simpson was excluded from the liability coverage under the automobile insurance policy and, therefore, that National Insurance Association did not have a duty to defend Ms. Simpson with regard to Mr. Franklin's claim against her.

**III.**

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal, jointly and severally, to Katherine Michelle Simpson and David Franklin and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., J.