IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 22, 2005 Session

## SOUTHERN SECURITY FEDERAL CREDIT UNION v. CUMIS INSURANCE SOCIETY, INC.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-03-0809-3     D. J. Alissandratos, Chancellor

### No. W2004-02700-COA-R3-CV - Filed December 27, 2005

In this appeal, we are called upon to review the trial court's order entering summary judgment in favor of the bank. After one of its customers deposited a counterfeit check into its account at the bank, the bank filed a claim with its insurance company to recover for its loss under a bond. Specifically, the bank sought coverage under two provisions in the bond. The bank filed its first motion for summary judgment on one of the bond's provisions. The insurance company responded by agreeing that, for purposes of ruling on the motion for summary judgment, the bank's customer intended to commit a fraud when he deposited the check. By doing so, the insurance company sought to trigger an exclusion provision in the bond. Thereafter, the bank filed a second motion for summary judgment on the other provision in the bond. In response, the insurance company, in an effort to create a disputed issue of material fact as to this provision, asserted that the customer did not intended to commit fraud when he deposited the check. The trial court granted the bank's motions for summary judgment. In regards to the bank's motions for summary judgment, we reverse the trial court's award of summary judgment to the bank and find that genuine issues of material fact remain to be decided, therefore, summary judgment is inappropriate.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Fred C. Statum, III, Jeffrey S. Price, Nashville, TN, for Appellant

Michael G. McLaren, William E. Cochran, Jr., Memphis, TN, for Appellee

**OPINION**

**I.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Gulf Properties, Ltd., Inc. (hereinafter "Gulf Properties"), a Tennessee corporation, maintained an account at Southern Security Federal Credit Union (hereinafter "Southern Security" or "Appellee"), a federally chartered credit union with its principal place of business in Memphis, Tennessee. In 1996, Allen C. Thompson (hereinafter "Thompson"), the chief executive officer of Gulf Properties, was contacted via the Internet by an individual identifying himself as Prince Jerry Ufot (hereinafter "Prince Ufot") of Nigeria. Prince Ufot requested Thompson's assistance with making investments in the United States. In response to this inquiry, Thompson expressed his concerns to Prince Ufot about fraudulent Nigerian investment schemes. Nevertheless, Prince Ufot persuaded Thompson to assist him in the venture, and Prince Ufot informed Thompson that he received a commitment from a banker who intended to send Thompson a check for £ 120,000 pounds sterling. Thompson agreed to assist Prince Ufot by researching potential investment opportunities available in the United States in exchange for an $18,000.00 fee to cover his expenses. The parties agreed to this fee, and Prince Ufot informed Thompson that he could deduct the fee from the forthcoming check.

When Thompson received the check, he deposited it into Gulf Properties' account at Southern Security on April 25, 2002. According to Thompson, he informed Southern Security of his concerns about the check's validity and that he wanted the check deposited for collection only. On April 26, 2002, Southern Security forwarded the check to National Bank of Commerce (hereinafter "NBC") for international collection. On May 9, 2002, Southern Security received a credit from NBC in the amount of $170,964.00, the United States Dollar equivalent of the £ 120,000 pounds sterling. According to Southern Security, it relied on this credit as evidence of collection by NBC, and it released its hold on the funds and issued a credit to Gulf Properties' account. According to Thompson, he received a call from Southern Security around this time informing him that the check had cleared and that the funds were credited to Gulf Properties' account.

On May 9, 2002, the same day that Southern Security received the credit from NBC, Thompson transferred $9,000.00 to another account and withdrew an additional $9,000.00 to cover his $18,000.00 fee. On May 14, 2002, Thompson, at the direction of Prince Ufot, transferred $140,000.00 from Gulf Properties' account to another bank in China. According to Thompson, Prince Ufot stated that he intended to release in excess of $30,000,000.00 in additional investment funds upon receipt of the $140,000.00. On May 23, 2002, NBC notified Southern Security that it would be returning the check due to "suspected fraud." Further, NBC debited $174,427.36 from Southern Security's account at NBC. The parties subsequently learned that the check was counterfeit. In response to NBC's actions, Southern Security froze Gulf Properties' account. By the time NBC returned the check to Southern Security, however, only $580.33 of the original amount remained in Gulf Properties' account.

When the aforementioned facts unfolded, Southern Security was the named insured under a "Credit Union Bond" (hereinafter the "Bond") issued by Cumis Insurance Society, Inc. (hereinafter "Cumis" or "Appellant"), a Wisconsin corporation. On June 13, 2002, Southern Security, relying on the Bond, submitted a claim to Cumis to recover the losses it incurred in this case. When Cumis refused to pay the claim, Southern Security filed a complaint against Thompson, Gulf Properties, Cumis, and NBC in the Chancery Court of Shelby County.[1] Therein, Southern Security alleged that Thompson deposited the check with the intent to defraud Southern Security. It also sought a declaratory judgment against Cumis regarding its rights under the Bond, specifically relying on two coverage provisions in the Bond. Coverage Provision R, governing fraudulent deposits, provides as follows:

> We will pay you for your loss resulting directly from a person depositing into a share, share draft or other depository account maintained with you, or exchanging for cash with you, a check or draft that is ultimately not paid, providing that:
>
> a.  The person intended to commit a fraud by depositing or exchanging for cash the check or draft; and
>
> b.  You made payment or extended credit against the check or draft.
>
> For purposes of this coverage only:
>
> 1)  Cashing or permitting withdrawals against a check or draft prior to final settlement will not be considered extensions of credit excluded by the Loan Exclusion; and
>
> 2)  Loss sustained by you pursuant to the provisions of a written contract between you and a credit union service network due to a deposit or exchange that occurs at a "service center" or "service outlet" will be considered a direct loss and will not be excluded by the Service Center Exclusion.

Coverage Provision W, governing counterfeit share drafts, checks, or securities, provides, in relevant part, as follows:

---

[1] On August 28, 2003, the trial court entered an order granting Southern Security's motion for a default judgment against Thompson and Gulf Properties due to their failure to answer the complaint.

> 1. We will pay you for your loss resulting directly from a "counterfeit"[2] share draft or check other than a money order which was finally paid against your corporate share or checking account or a share draft or checking account your member has with you.

Relying on these coverage provisions, Southern Security alleged that Cumis breached the bond by refusing to pay the claim in bad faith. Cumis subsequently answered Southern Security's complaint by denying that it had an obligation under the Bond to pay Southern Security's claim.

On January 21, 2004, Southern Security filed a motion for summary judgment against Cumis in the trial court. In support of its motion, Southern Security also submitted the affidavit of an investigative consultant specializing in financial fraud who opined that the check presented by Thompson was counterfeit and that Thompson "was an active participant in a Nigerian advance fee fraud Email scam that served as the catalyst for [Southern Security's] loss." Southern Security also submitted an accompanying statement of undisputed facts and a memorandum of law, both of which included only a reference to Coverage Provision W, reiterated the opinions of Mr. Wilson, and asserted that Southern Security's loss was covered under that provision of the Bond.

In response to Southern Security's motion, Cumis submitted a memorandum in opposition to the motion asserting that, pursuant to the plain language of Coverage Provision W, Southern Security was precluded from recovering under the Bond. Specifically, Cumis asserted that, not only must Southern Security show that the check was counterfeit in order to recover under Coverage Provision W, but it must also demonstrate that the check was "finally paid" and that the check was "paid against your corporate share or checking account or a share draft or checking account your member has with you." Cumis alleged in the alternative that, even if Southern Security's loss fell within the scope of Coverage Provision W, a genuine issue of fact remained as to whether Southern Security's loss was caused by its own failure to act in a commercially reasonable manner and its failure to mitigate its damages.

Moreover, Cumis argued that the Bond contained Exclusion Provision 10, governing fraudulent deposits, which would further preclude recovery based upon the allegations in Southern Security's pleadings. Exclusion Provision 10 provides as follows:

> Any loss resulting directly from a person depositing into a share, share draft, checking or other depository account maintained with you, or exchanging for cash with you a check or draft that is not paid provided:

---

[2]The Bond defines "counterfeit" as "an imitation which is intended to deceive and to be taken as an original."

a.    The person intended to commit a fraud by depositing or exchanging for cash the check or draft; and

b.    You made payment or extended credit against the check or draft.

Except as may be covered under:

1)    Fraudulent Deposit Coverage; or

2)    Employee Or Director Dishonesty Coverage; or

3)    Plastic Care/PIN Endorsement.

Specifically, Cumis noted the following: (1) in its complaint, Southern Security alleged that Thompson "committed intentional misrepresentation, deceit and fraud against [Southern Security]"; and (2) in support of its motion for summary judgment, Southern Security asserted that Thompson was an "active participant" in a scheme to defraud Southern Security. In response to Southern Security's statement of undisputed facts, Cumis admitted, "only for the purpose of responding to [Southern Security's] Motion for Summary Judgment," that the check was counterfeit and that Thompson engaged in a scheme to defraud Southern Security. Cumis expressly reserved "the right to offer proof challenging Mr. Thompson's purported knowledge of the nature of the counterfeit check."

On March 19, 2004, Southern Security submitted a response to Cumis' memorandum referencing Cumis' admission that Thompson "committed misrepresentation, deceit and fraud" and stating: "This undisputed fact greatly simplifies the coverage issue before the court and insures [sic] coverage under Coverage Provision R of the Bond." A hearing on Southern Security's original motion for summary judgment was set for March 26, 2004, however, counsel for Cumis did not receive a copy of Southern Security's latest response until March 25, 2004, the day before the hearing. Cumis informed Southern Security on March 25, 2004 that it deemed this latest response to be a second motion for summary judgment, therefore, Cumis asserted that it should be given the time permitted by the Tennessee Rules of Civil Procedure to respond to such motion.

Cumis subsequently filed its response to Southern Security's second motion for summary judgment, wherein Cumis asserted that Thompson "did not intend to commit a fraud by depositing with [Southern Security] the subject cashier's check." In support of its response, Cumis submitted Thompson's affidavit, wherein he stated as follows:

I did not participate in any fraudulent scheme and was a victim of the scheme of Prince Ufot's actions. If I had known the check was not valid, I would not have authorized the transfer to [the bank in China]. I relied upon [Southern Security] to confirm that the check was valid

and finally paid before the proceeds from the check were made available and withdrawn.

After conducting a hearing on Southern Security's motions for summary judgment, the chancery court entered an order on July 21, 2004 finding simply that "said motion is well taken and should be granted," and entered a judgment awarding damages to Southern Security. Thereafter, Southern Security filed a motion for prejudgment interest. On October 11, 2004, the chancery court entered an order granting Southern Security's motion for prejudgment interest. Cumis filed a timely appeal to this Court presenting the following issues for our review:

1. Whether the trial court erred in granting summary judgment to the Appellee; and
2. Whether the trial court erred in awarding prejudgment interest to the Appellee.

For the reasons set forth more fully herein, we reverse the trial court's grant of summary judgment to the Appellee and remand this case for further proceedings.

## II.
### STANDARD OF REVIEW

"[T]he summary judgment process is designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no genuine dispute regarding material facts." *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993) (citations omitted). A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04 (2005); *see also Williamson County Broad. Co. v. Williamson County Bd. of Educ.*, 549 S.W.2d 371, 372 (Tenn. 1977) (setting forth the two imperatives contained in the rule). "The moving party has the burden of proving that its motion satisfies these requirements." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citing *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991)). "Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Byrd*, 847 S.W.2d at 211 (citations omitted). The party opposing the motion "may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06 (2005).

The standards governing a court's assessment of the evidence when evaluating a motion for summary judgment are well established. *Bain*, 936 S.W.2d at 622; *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Courts must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Byrd*, 847 S.W.2d at 210–11. In doing so, courts are not permitted to "weigh" the evidence or evaluate the credibility of the witnesses. *Id*. at 216. Courts should grant a motion for summary judgment only when the facts and the inferences drawn from those facts would permit a reasonable person to reach only one

conclusion. *Bain*, 936 S.W.2d at 622 (citation omitted); *Carvell*, 900 S.W.2d at 26 (citation omitted).

The standard of review which guides this Court when evaluating a trial court's grant of summary judgment to a party is likewise well established. *Bain*, 936 S.W.2d at 622; *Carvell*, 900 S.W.2d at 26. "Our task on appeal is to review the record to determine whether the requirements for granting summary judgment have been met." *Church v. Perales*, 39 S.W.3d 149, 157 (Tenn. Ct. App. 2000); *see also Burgess v. Harley*, 934 S.W.2d 58, 62 (Tenn. Ct. App. 1996). To that end, we are guided by the same standards utilized by the trial court in evaluating the motion for summary judgment. *Prince v. St. Thomas Hosp.*, 945 S.W.2d 731, 733 (Tenn. Ct. App. 1996). Accordingly, we review a trial court's grant of summary judgment to a party "*de novo* without any presumption that the trial court's conclusions were correct." *Webber v. State Farm. Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *see also Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000).

### III.
#### DISCUSSION

On appeal, Cumis contends that summary judgment is not appropriate in this case because genuine issues of material fact exist regarding whether Southern Security may recover under Coverage Provision W and/or Coverage Provision R in the Bond. Conversely, Southern Security argues that summary judgment is appropriate in this case because, even if a genuine issue of fact exists as to whether Thompson committed fraud and, therefore, a trial as to Coverage Provision R is necessary, it is still entitled to recover under Coverage Provision W since it is undisputed that the check at issue is counterfeit.

We must begin by properly characterizing the various documents filed in the trial court. In its complaint, Southern Security sought a declaratory judgment as to its rights under Coverage Provision W and Coverage Provision R in the Bond. Southern Security filed its original motion for summary judgment on January 21, 2004. Therein, it only mentioned Coverage Provision W. After Cumis responded to this motion, Southern Security filed a response to Cumis' response stating that, pursuant to the content of Cumis' response, it was entitled to coverage under Coverage Provision R. Cumis treated Southern Security's response as a second motion for summary judgment as to Coverage Provision R. The trial court's order does not indicate whether it treated these filings as two separate motions for summary judgment with responses thereto. In any event, we have determined that Southern Security filed two motions for partial summary judgment — one for each of the coverage provisions at issue — in the trial court below.[3]

---

[3] Our characterization of the various documents filed with the trial court as motions for partial summary judgment is supported by the statements of the parties during the course of this litigation. At oral argument, counsel for Southern Security referred to its later filing as a second motion for summary judgment. Throughout this litigation, Cumis has steadfastly argued that Southern Security has, in essence, filed two motions for summary judgment.

A party is entitled to seek summary judgment as to any or all of the causes of action raised in a complaint. *See* Tenn. R. Civ. P. 56.01 (2005) (governing a plaintiff's right to seek summary judgment "as to all or any part" of its claim); Tenn. R. Civ. P. 56.02 (2005) (governing the defendant's right to seek summary judgment "as to all or any part" of the claims against it); Tenn. R. Civ. P. 56.05 (2005) (setting forth the procedure to be used when a case is not fully adjudicated on a motion for summary judgment). From the terseness of the trial court's order, we must infer that the trial court granted both of Southern Security's motions. Accordingly, we will address the correctness of the trial court's rulings regarding these two motions in turn.

### A.
### Summary Judgment as to Coverage Provision W

In relevant part, Coverage Provision W provides that Cumis will pay Southern Security for a loss resulting from a "'counterfeit' share draft or check other than a money order which was finally paid against your corporate share or checking account or a share draft or checking account your member has with you." In support of its motion for summary judgment as to this provision, Southern Security supplied the affidavit of its investigative consultant who opined that the check presented by Thompson was counterfeit and that Thompson engaged in a scheme to defraud Southern Security. Southern Security also submitted a statement of undisputed facts and memorandum of law, wherein it reiterated the consultant's opinions.

The party opposing the motion for summary judgment must respond to the facts set forth by the movant by one of the following methods: "(i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed." Tenn. R. Civ. P. 56.03 (2005). "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06 (2005).

In its response to Southern Security's first motion for summary judgment, Cumis admitted that the check was counterfeit, but "only for purpose of responding to [Southern Security's] Motion for Summary Judgment." Cumis also admitted that Thompson engaged in a scheme to defraud Southern Security, but "only for the purpose of responding to [Southern Security's] Motion for Summary Judgment." Moreover, Cumis reserved the right to offer proof to challenge Thompson's exact knowledge concerning the nature of the counterfeit check.

Despite Cumis' admission that the check at issue was counterfeit, Cumis asserted that genuine issues of material fact remained as to the other elements set forth in Coverage Provision W. Namely, whether the check had been "finally paid," and whether the check was "drawn on or paid against" an account held at Southern Security. Cumis, relying on the undisputed fact that Thompson intended to commit a fraud, also asserted that a genuine issue of material fact existed regarding whether Exclusion Provision 10, which precludes coverage for a loss from a check deposited into an account at Southern Security when the person depositing the check intended to commit a fraud,

would abrogate coverage under Coverage Provision W. Finally, Cumis asserted that genuine issues of material fact existed regarding whether Southern Security was precluded from recovering under the Bond for its failure to act in a commercially reasonable manner and its failure to mitigate its loss.

On appeal, Southern Security argues that Coverage Provision W is susceptible to multiple interpretations, one being that the "finally paid" and "paid against" language applies only to money orders. Since the check at issue was clearly not a money order, Southern Security contends that these elements are inapplicable to the present case. The trial court's order does not indicate whether the trial court found Coverage Provision W to be ambiguous. Upon reviewing Southern Security's response to Cumis' response to its first motion for summary judgment, we note that Southern Security never raised the ambiguity of the contract as an issue in the trial court. Instead, Southern Security attempted to distinguish the law relied upon by Cumis in support of its argument that these elements must be met before Southern Security could recover. It is well established that the appellate courts of this state will not entertain issues raised for the first time on appeal. *City of Cookeville v. Humphrey*, 126 S.W.3d 897, 905–06 (Tenn. 2004); *Lawrence v. J.L. Stanford & Ashland Terrace Animal Hosp.*, 655 S.W.2d 927, 929 (Tenn. 1983); *Chadwell v. Knox County*, 980 S.W.2d 378, 384 (Tenn. Ct. App. 1998). Cumis has taken the position that Coverage Provision W is ambiguous for the first time on appeal. Accordingly, we decline to entertain this argument. Thus, disputed legal and factual issues regarding the applicability of this provision in the Bond remain to be resolved.

Next, Cumis responded to Southern Security's first motion for summary judgment by asserting that Southern Security failed to act in a commercially reasonable manner and that it failed to mitigate its losses. On appeal, Southern Security contends that Cumis failed to offer any evidence to create a genuine issue of material fact regarding these defenses in its response to Southern Security's motion for summary judgment. We agree.

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial*." Tenn. R. Civ. P. 56.06 (2005) (emphasis added). Upon reviewing Cumis' response to Southern Security's motion for summary judgment on Coverage Provision W, we find no citations to any facts in the record which would create disputed issues of fact on these defenses. To the contrary, Cumis merely made perfunctory allegations to the effect that Southern Security engaged in conduct that would permit Cumis to assert these defenses. Cumis cannot rely on these bare assertions to create genuine issues of material fact as to these defenses. Accordingly, Cumis cannot rely on these defenses as the basis for its argument that Southern Security's motion for summary judgment on Coverage Provision W should be denied.

Finally, we turn to the applicability of Exclusion Provision 10. Southern Security contends that, since both parties agree that the check at issue is counterfeit, it is entitled to recover under Coverage Provision W as a matter of law. Southern Security's position, however, overlooks the significance of Exclusion Provision 10. For purposes of this motion for summary judgment, it is

undisputed that Thompson intended to commit a fraud when he deposited the check into Gulf Properties' account at Southern Security. "The issues relating to the scope of coverage . . . present questions of law which 'can be resolved using a summary judgment when the relevant facts are not in dispute.'" ***Allstate Ins. Co. v. Jordan***, 16 S.W.3d 777, 779 (Tenn. Ct. App. 1999) (quoting ***Standard Fire Ins. Co. v. Chester O'Donley & Assocs.***, 972 S.W.2d 1, 5–6 (Tenn. Ct. App. 1998)). Thus, Exclusion Provision 10, by its plain and unambiguous language,[4] would preclude Southern Security from recovering under Coverage Provision W based on the undisputed fact, for purposes of this motion, that Thompson intended to commit a fraud against Southern Security.

### B.
### *Summary Judgment as to Coverage Provision R*

Coverage Provision R provides, in essence, that Cumis will pay Southern Security for a loss resulting from a person depositing a check into an account held at Southern Security when that person intended to commit a fraud and Southern Security made payment on the check. On March 19, 2004, Southern Security responded to Cumis' response to the first motion for summary judgment filed by Southern Security. Therein, Southern Security noted that, in response to its initial motion for summary judgment, Cumis admitted that Thompson committed a fraud against Southern Security when he deposited the counterfeit check. Relying on this admission, Southern Security asserted that it was entitled to summary judgment on Coverage Provision R. In response, Cumis filed the affidavit of Thompson stating that he did not intend to commit a fraud when he deposited the check.

On appeal, Cumis argues that Southern Security is not entitled to summary judgment under Coverage Provision R because Thompson's affidavit created a genuine issue of material fact regarding whether he intended to commit fraud when he deposited the check. Conversely, Southern Security contends that no genuine issue of material fact exists because Cumis previously admitted that Thompson committed fraud, therefore, it is bound by that admission. Specifically, Southern Security argues that Cumis is judicially estopped from taking inconsistent positions on this issue.

"The doctrine of judicial estoppel or estoppel by oath is well established in this state." ***Monroe County Motor Co. v. Tenn. Odin Ins. Co.***, 231 S.W.2d 386, 392 (Tenn. Ct. App. 1950). "A general statement of the doctrine of judicial estoppel is that where one states on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he will not be permitted to deny that fact in subsequent litigation, although the parties may not be the same." ***Melton v. Anderson***, 222 S.W.2d 666, 669 (Tenn. Ct. App. 1948). As we have previously noted,

---

[4] The parties do not assert that this provision is ambiguous. "It is the function of a court to interpret and enforce contracts as they are written, notwithstanding they may contain terms which my be thought harsh and unjust. A court is not at liberty to make a new contract for parties who have spoken for themselves." ***Smithart v. John Hancock Mut. Life Ins. Co.***, 71 S.W.2d 1059, 1063 (Tenn. 1934). "The language of the policy must be taken and understood in its plain, ordinary and popular sense." ***Am. Justice Ins. Reciprocal v. Hutchison***, 15 S.W.3d 811, 814–15 (Tenn. 2000) (citing ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578, 580 (Tenn. 1975)). When the language is plain and unambiguous, the "[q]uestions relating to the interpretation of written contracts involve legal rather than factual issues." ***Nat'l Ins. Ass'n v. Simpson***, 155 S.W.3d 134, 138 (Tenn. Ct. App. 2004) (citations omitted).

"[j]udicial estoppel is, strictly speaking, not a true estoppel. It has been termed a *quasi* estoppel which estops a party from playing fast and loose with the courts by contradicting a previous position or previous testimony during a course of litigation or during a subsequent action." ***Woods v. Woods***, 638 S.W.2d 403, 405–06 (Tenn. Ct. App. 1982) (citations omitted); ***see also Stamper v. Venable***, 97 S.W. 812, 813 (Tenn. 1906); ***Gerber v. Segal***, No. W2001-01709-COA-R3-CV, 2003 Tenn. App. LEXIS 120, at *8–9 (Tenn. Ct. App. Feb. 11, 2003). The doctrine is aimed at

> safeguard[ing] the administration of justice by placing a restraint upon the tendency to reckless and false swearing and thereby preserve the public confidence in the purity and efficiency of judicial proceedings.
>
> . . . .
>
> As said, the rule rests not upon the prejudice to the individual, but prejudice to the administration of justice and hence to society, which would result if a litigant were allowed to obtain an advantage for himself, or attempt to do so, by willfully swearing one thing one time, and obtain another advantage, or attempt to do so, by willfully swearing precisely the opposite another time, with no explanation of the inconsistency and with the possibility of prevailing in both instances. To countenance such a situation would be to regard with complacency a violation of the sanctity of the oath, and bring our system into disrepute.

***Melton***, 222 S.W.2d at 669.

Several decisions handed down by the appellate courts of this state suggest that a prior statement of fact directly contradictory to a present statement of fact must have been made under oath before the doctrine of judicial estoppel can be applied. ***See***, ***e.g.***, ***Allen v. Neal***, 396 S.W.2d 344, 346 (Tenn. 1965) ("Judicial estoppels arise from sworn statements made in the course of judicial proceedings, generally in former litigation . . . ."); ***Sartain v. Dixie Coal & Iron Co.***, 266 S.W. 313, 318 (Tenn. 1924) ("The distinctive feature of the Tennessee law of judicial estoppel (or estoppel by oath) is the expressed purpose of the court, on broad grounds of public policy, to uphold the sanctity of an oath."); ***Werne v. Sanderson***, 954 S.W.2d 742, 745 (Tenn. Ct. App. 1997) (citing ***Brown v. Brown***, 281 S.W.2d 492, 502 (Tenn. 1955)) ("[I]n order for the judicial estoppel to apply, the party against whom the estoppel is urged must have made a statement of fact under oath that he or she later seeks to contradict.").

Based on the aforementioned authorities, one could conclude that, since the statement of fact made by Cumis in response to Southern Security's first motion for summary judgment (i.e., that Thompson did commit a fraud) was not made under oath, the doctrine of judicial estoppel is inapplicable to Cumis' response to Southern Security's second motion for summary judgment (i.e.,

that Thompson did not commit a fraud). Southern Security correctly notes, however, the following statement by our supreme court regarding the doctrine of judicial estoppel:

> While the law of judicial estoppel is ordinarily applied to one who has made oath to a state of facts in a former judicial proceeding which in a later proceeding he undertakes to contradict, *yet it is frequently applied, where no oath is involved, to one who undertakes to maintain inconsistent positions in a judicial proceeding*.

***Stearns Coal & Lumber Co. v. Jamestown R. Co.***, 208 S.W. 334, 334 (Tenn. 1918) (citing ***Stamper v. Venable***, 97 S.W. 812, 813 (Tenn. 1906)) (emphasis added); *see also* 31 C.J.S. *Estoppel and Waiver* § 140 (1996) ("Generally, a party is estopped to assume inconsistent positions in the course of the same judicial proceeding."). Thus, it would appear that "an oath is not absolutely required in order for the judicial estoppel doctrine to be applied." ***Greenman v. Hutchins***, No. 03A01-9709-CV-00404, 1998 Tenn. App. LEXIS 283, at *13 (Tenn. Ct. App. Apr. 29, 1998) (no perm. app. filed).

While we must adhere to the general statement of the doctrine formulated by our supreme court, ***Barger v. Brock***, 535 S.W.2d 337, 341 (Tenn. 1976), Southern Security cites to no case applying the doctrine to the unique facts of this case. Likewise, our own independent research has failed to find any Tennessee case squarely addressing this issue. In any event, Southern Security's attempts to judicially estop Cumis from asserting in its response to Southern Security's second motion for summary judgment that Thompson did not commit fraud must fail. The doctrine of judicial estoppel will only apply where "the previous statement was not only untrue but was *willfully false* in the sense of conscious and deliberate perjury." ***Monroe***, 231 S.W.2d 386, 393 (Tenn. Ct. App. 1950) (citing ***Davis v. Mitchell***, 178 S.W.2d 889, 897 (Tenn. Ct. App. 1943)) (emphasis added); *see also **Rose v. Snyder***, 206 S.W.2d 897, 906 (Tenn. 1947) ("[I]t does not apply where there is an explanation showing such statement was . . . anything short of a 'wilfully false' statement of fact."); ***Chandler v. D. Canale & Co.***, No. W2000-02067-COA-R3-CV, 2001 Tenn. App. LEXIS 394, at *9 (Tenn. Ct. App. May 25, 2001) ("Anything short of a willfully false statement is insufficient to invoke judicial estoppel."); ***Woods v. Woods***, 638 S.W.2d 403, 406 (Tenn. Ct. App. 1982) ("The doctrine of judicial estoppel applies only where there has been a willful misstatement of fact — that is, perjury.").

We cannot say that Cumis' response to Southern Security's first motion for summary judgment (i.e., that Thompson did not engage in fraud against Southern Security) constitutes a willful misstatement of fact. Rule 56.03 of the Tennessee Rules of Civil Procedure expressly provides that a party opposing a motion for summary judgment may respond to said motion by "agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only." Tenn. R. Civ. P. 56.03 (2005). This is precisely what Cumis did, reserving its right to offer proof to the contrary should it become necessary to do so. Cumis only changed its position on this factual issue when Southern Security filed its second motion for summary judgment. We cannot say that this amounts to a willful misstatement of fact which would trigger the application of the doctrine

of judicial estoppel.[5]  Accordingly, Cumis is not judicially estopped from asserting in its response to Southern Security's second motion for summary judgment that Thompson did not intend to commit a fraud against Southern Security.

At oral argument, Southern Security conceded that, if a factual issue exists concerning whether Thompson engaged in a fraud, then summary judgment regarding Coverage Provision R would not be appropriate.  Thompson's affidavit creates a genuine issue of material fact on the issue of whether Thompson engaged in a fraud against Southern Security.  "We recognize that where a claim of fraud is presented, ordinarily only upon a full trial of the action can the issue properly be developed.  As a general rule, summary judgment is not an appropriate procedure for the disposition of such an issue."  *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978).  Accordingly, the trial court erred in granting this motion for summary judgment as well.

### III.
#### CONCLUSION

Regarding Coverage Provision W, we hold that the trial court erred in awarding summary judgment to Southern Security.  Instead, we reverse the trial court's ruling regarding this provision.  Moreover, Southern Security is not entitled to summary judgment as to Coverage Provision R, therefore, it "has simply lost a preliminary skirmish and must proceed to trial."  *Williamson County Broad. Co. v. Williamson County Bd. of Educ.*, 549 S.W.2d 371, 372 (Tenn. 1977).  Having determined that the trial court erred in awarding summary judgment to the Appellee in both instances, we necessarily reverse the trial court's ruling regarding prejudgment interest.  However, we need not address the propriety of the trial court's ruling in that regard given the need for a trial in this case.  Costs of this appeal are to be taxed to the Appellee, Southern Security Federal Credit Union, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[5] "Typically, summary judgment motions are not made until each side has had a chance to engage in formal discovery to gather what evidence there is in support of his or her position."  Jack H. Friedenthal et al., *Civil Procedure* § 9.2, at 454 (3rd ed. 1999); *see also Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 608 (Tenn. Ct. App. 2001) ("Implicit in the summary judgment rubric is the idea that it should only be granted after adequate time for discovery.").  Nothing in the record presently before this Court suggests that the parties engaged in discovery prior to Southern Security filing its motions for summary judgment.  Thus, we are not presented with an admission of fact which typically follows a request for such an admission.  *See* Tenn. R. Civ. P. 36.02 (2005) (noting that an admission made pursuant to a request for admissions is "conclusively established unless the court on motion permits withdrawal or amendment of the admission."); *Tenn. Dep't of Human Servs. v. Barbee*, 714 S.W.2d 263, 266 (Tenn. 1986) ("[A] Rule 36 admission, unless it is allowed to be withdrawn or amended, concludes the matter and avoids any need for proof at trial.").