**CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON Subscribing to Certificate Number AMTE001696, Plaintiff,**

v.

**William PANIAGUA, et al., Defendants.**

No. 1:11–cv–01229–JDB–egb.

United States District Court,
W.D. Tennessee,
Eastern Division.

July 2, 2013.

Emily Campbell Taube, Adams & Reese, LLP, Memphis, TN, for Plaintiff.

R. Dale Thomas, Matthew Robert Courtner, Rainey Kizer Reviere & Bell, PLC, Jackson, TN, Garrett E. Asher, Parker Lawrence Cantrell & Smith, James Matthew Blackburn, Cornelius & Collins, LLP, Nashville, TN, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS [1] FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

J. DANIEL BREEN, District Judge.

Before this Court are Plaintiff, Certain Underwriters at Lloyd's London ("Lloyd's"), and Defendants, William Paniagua, Crane Contractors LLC d/b/a Contractors Inc. ("Crane"), CLK Multi Family Management, LLC ("CLK"), and Consolidated American Services, Inc. d/b/a Creekstone Apartments' ("Creekstone"), cross-motions for summary judgment. (Docket Entry ("D.E.") 65, 67, 68, 70.) The parties seek a declaratory judgment as to whether Lloyd's is liable to defend and indemnify Paniagua for a fire that was allegedly caused by his welding work. (D.E. 1.)

---

**1.** Before the Court are Paniagua (D.E. 65), Crane (D.E. 67), CLK and Creekstone (D.E. 68), and Lloyd's (D.E. 70) motions for summary judgment. The motions by Crane, CLK, and Creekstone each rely on the memorandum submitted by Paniagua in support of his motion.

Based on the following reasons, the Court finds that the insurance policy covers the work activities at issue and therefore GRANTS Paniagua, Crane, CLK, and Creekstone's motions for summary judgment. Lloyd's motion for summary judgment is thus DENIED.

## I. BACKGROUND

On April 8, 2010 Lloyd's issued a policy for commercial general liability coverage to Paniagua, which provided in part that

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result."

(Policy, D.E. 1–3) The policy also contained the following classification limitation exclusion:

> This insurance does not apply to "bodily injury," "property damage," "advertising injury," "personal injury," or medical payments for operations which are not classified or shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements.

(*Id.*) On the policy's CGL Coverage Declarations Pages, coverage is allowed for activities falling under (1) "Handyperson—Excluding Roofing", (2) "Painting—Exterior—Buildings or Structures—3 Stories or Less in Height—NOC," and (3) "Painting—Interior Buildings or Structures." (*Id.*) The policy does not define what being a "handyperson" entails.

Paniagua was hired as a subcontractor to perform repair work on various sets of exterior metal stairs at a Nashville apartment complex. (Compl., D.E. 1, ¶ 16.) This work included welding operations. (*Id.*) On December 9, 2010, after Defendant completed his work and left the apartment complex, the supporting structures surrounding one of these stairways caught on fire. (*Id.* at ¶ 17.) The fire caused property damage to both the exterior and interior of the apartment complex and a number of tenants suffered bodily injury. (*Id.* at ¶¶ 17, 18.) Four lawsuits have been filed in state court seeking damages arising out of Paniagua's work. (Def. Resp. to Statement of Undisputed Material Facts, D.E. 78, ¶ 30.)

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the motion is supported by documentary evidence, such as affidavits or depositions, the nonmoving party may not rely on its pleadings but rather must provide the Court with facts establishing that there is "a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." *Pucci v. Nineteenth Dist. Court,* 628 F.3d 752, 759 (6th Cir.2010) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). When the plaintiff fails to establish an element essential to its case, this Court may appropriately enter summary judgment against it. *Poss v. Morris (In re Morris),* 260 F.3d 654, 665

(6th Cir.2001) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). "[T]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). "When parties submit cross-motions for summary judgment on the same claim or issues, each motion must be considered on its own merits and analyzed under Rule 56." *Melchizedek v. Holt*, 792 F.Supp.2d 1042, 1049 (D.Ariz.2011).

### III. ANALYSIS

In dispute is whether the policy issued by Lloyd's covers accidents caused by welding operations. The Defendants contend that the handyperson classification includes welding work while the Plaintiff argues that activity falls outside the scope of the job responsibilities of a handyperson. The policy does not specify what a handyperson is or what tasks fall under that designation.

 Because this is a diversity claim involving the interpretation of a contract executed in Tennessee, the Court must adhere to the State's law on the issue. *See Carbon Processing and Reclamation, LLC v. Valero Marketing and Supply Co.*, 823 F.Supp.2d 786, 801 (W.D.Tenn.2011) ("A federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules. Generally, Tennessee follows the rule of *lex loci contractus*, meaning that 'a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent.'") (internal citation omitted). Under Tennessee law, a Court's "principal goal is to ascertain and to enforce the intent of the contracting parties. The parties' intent, and therefore the meaning of the contract, should be derived

from the provisions in the insurance policy itself." *National Ins. Ass'n v. Simpson*, 155 S.W.3d 134, 137 (Tenn.Ct.App.2004) (internal citations omitted). Here Plaintiff relies on the classification limitation exclusion, which stipulates that it is not obligated to indemnify Paniagua for non-classified activities, in order to defeat coverage. "Clauses excluding coverage should be strictly construed against the insurer but in light of their apparent purpose." *Id.* at 138 (citing *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn.1991); *Tenn. Farmers Mut. Ins. Co. v. Moore*, 958 S.W.2d 759, 763 (Tenn.Ct.App.1997); *Dressler v. State Farm Auto. Ins. Co.*, 52 Tenn.App. 514, 376 S.W.2d 700, 702 (1963)). While exclusions should not be read in favor of the insurer, they also should not be interpreted as to defeat their intended purpose. *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct.App.1998). When interpreting the terms of a contract, a court should give them their "plain and ordinary meaning." *U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009).

 Because the term "handyperson" is not defined in the policy, the Court looks to other sources to aid in its interpretation. *See American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 815 (Tenn.2000) ("When called upon to interpret a term used in an insurance policy that is not defined therein, courts in Tennessee sometimes refer to dictionary definitions.") The Defendant directs the Court to the Merriam–Webster's Online Dictionary which defines "handyperson" as "one competent in a variety of small skills or inventive or ingenious in repair or maintenance work." *Handyman*, Merriam–Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/handyman. This definition of "handyperson" is general and

nonspecific, and can include a person engaged in a variety of jobs and tasks that fall under the larger umbrella of repair and maintenance work. Because the term is broad and because the Court is tasked with interpreting the term in favor of the insured, it finds that the welding work undertaken by Paniagua falls within the scope of this definition. The general nature of Paniagua's work was repairing metal stairs located around the apartment complex. Welding was simply the means by which he effected these repairs. Because the term "handyperson" encompasses a person who performs a variety of tasks, it could reasonably be interpreted to include repair or maintenance work involving the use of welding. The only exclusion under the policy for work performed by a handyperson is roofing. (Policy, D.E. 1–3.)

Lloyd's argues that the term handyperson should be limited to those who perform small jobs which could not include welding. That activity, contends Plaintiff, is unique in that it harbors greater hazards than typical maintenance tasks. The Plaintiff directs the Court to two cases which have interpreted exclusionary language in favor of the insurer. In *Essex Ins. Co. v. Davis*, No. 3:08–CV–1078–AH, 2009 WL 2424088, at *4 (N.D.Tex. Aug. 7, 2009), a federal court in Texas held that roofing repairs on a synagogue did not fall within the "residential roofing" classification in a policy, and in *Atlantic Cas. Ins. Co. v. C.A.L. Const. Corp.*, No. 06–CV–4036(DLI), 2008 WL 2946060, at *5 (E.D.N.Y. July 30, 2008), a New York district court concluded that roof work, brick work, and the construction of a driveway could not be considered interior carpentry or dry wall work. In both decisions, the terms being construed were fairly unambiguous with little room for interpretation. Thus, the type of work performed by those insureds clearly fell outside the scope of the policy.

This Court finds the cases cited by the Defendants, particularly *Essex Ins. Co. v. Foley*, No. 10–0511–WS–M, 2011 WL 1706214 (S.D.Ala. May 5, 2011) to be more pertinent to the present action. In *Essex*, the issue was whether an insurance policy covering "marina operations" included food service work conducted by a restaurant located at the marina. *Id.* at *7. The court noted that the term "marina" was commonly understood to be more than just an area to dock a boat but also a place that provided "suppl[ies], repair[s], and other facilities." Based on this finding, the Alabama federal court held that a reasonable interpretation of "marina operations" would include food services. *Id.* Likewise, the term "handyperson" in the instant action is encompassing enough to be susceptible to a number of interpretations including welding performed as part of repair or maintenance work. Accordingly, because terms in a contract should be strictly construed against the insurer, its author, the Court concludes that a broader interpretation of the term "handyperson" be applied in this action. The Court finds that Paniagua's welding work fell within the handyperson classification and holds that Plaintiff must defend and indemnify Paniagua in accordance with the terms of the policy for those injuries which arose from the December 9, 2010 fire. The Court GRANTS the Defendants' motions for summary judgment and DENIES the Plaintiff's motion.