Pile v. Carpenter.

S. H. PILE *et al.* *v.* JOHN M. CARPENTER *et al.*

*(Nashville.* December Term, 1906.)

1. **CHANCERY PRACTICE.** Finding of chancellor, sitting as a jury, on issue involving construction of written agreements is not conclusive, when.

The finding of the chancellor sitting as a jury by the consent of the parties in a chancery jury case is not conclusive on appeal, where the issue does not involve a matter of fact, pure and simple, but presents a question to be determined upon the construction of certain written agreements, because this raises a question of law to be decided by the court, and not a jury.

Case cited and approved: Toomey v. Atyoe, 95 Tenn., 373.

2. **REAL ESTATE AGENTS.** Without license cannot recover compensation for services, when. Case in judgment.

Real estate agents acting without license and without payment of the privilege tax imposed upon them at the time transactions occur cannot recover compensation for services rendered in making sales of lands; and complainants obtaining agreements from landowners to sell and convey certain lands at a certain specified price, in consideration of their finding purchasers and making sales, and with the understanding that whatever amounts might be realized from a sale of the lands over and above the specified price to be paid to the owners, should be divided equally between them, are real estate dealers and agents in the sense of the statute, and cannot recover from the purchasers the excess of the purchase price above the specified price to be paid and which was paid to the landowners.

Acts cited and construed: 1901, ch. 128, secs. 4, 14 and 16.

FROM FENTRESS.

Appeal from the Chancery Court of Fentress County.
—D. L. LANSDEN, Chancellor.

CONATSER & CASE, EVANS & SNODGRASS, SAMUEL N.
HARWOOD and EDWARD E. BARTHELL, for complainants.

MCCROSKEY & PEACE, for defendants.

MR. CHIEF JUSTICE BEARD delivered the opinion of the
Court.

The bill in this case was filed by the complainants,
who allege therein that the defendants were indebted
to them in the sum of $4,112.92, the same being the
balance due of purchase money of certain tracts of land
lying in Fentress county, Tennessee, sold by the com-
plainants to the defendants, and that this balance was
a lien upon several tracts described in the bill, the same
to be distributed, in the decree of foreclosure which was
sought, among the tracts in proportion to the sum due
upon each particular tract.   The defendants answered
the bill, denying all the equities therein.   Among the
defenses interposed was this: That the amount claimed
by the complainants was not a balance of purchase

118 Tenn—19

money, but was a commission, or profits in the nature
of a commission, upon the sales of the several tracts
of land referred to, negotiated by them for the owners
thereof, these sales being made, as is averred by the
complainants, while they were doing business as real
estate dealers, and at a time when, having failed to
pay the privilege imposed by the revenue act of 1901,
they were without authority to make the same, and that
under the circumstances mentioned they could not avail
themselves of the aid of the court to press their claim
against the defendants. The complainants demanded a
jury, and certain issues were prepared, with the approval
of the chancellor, for submission upon the trial.

Upon the calling of the case the parties, however,
agreed to a waiver of the jury, and instead it was stipu-
lated that the chancellor might hear the cause as if sit-
ting as a jury, and make responses to the various issues
thus made up. Accordingly the cause was heard by
him, and responses were made favorable to the com-
plainants, and thereupon a decree was entered upon these
responses, as well as upon a consideration of the whole
case, in which it was held that the defendants were in-
debted to the complainants, after the allowance of cer-
tain credits, in the sum of $3,816.64, and that the amount
so found to be due was a lien upon the several tracts
of land described in the bill, and it was directed that
these lands be sold, unless the amount so decreed was
paid within the time fixed by the chancellor. Upon ap-
peal, the cause having been assigned to the court of

chancery appeals, it was there heard, with the result that that court reversed the decree of the chancellor and dismissed the bill, with costs. From this decree of dismissal, the complainants have appealed, and in this court have filed assignments of error to the action of that court.

The court of chancery appeals find as a fact that the complainants were real estate dealers, and it was in carrying on that business the various contracts with the defendants were made for the sale of the several tracts of land referred to, and that the amounts claimed by them in their bill and decreed to them by the chancellor was in the nature of commissions or profits earned by them in perfecting their sales; that the complainants at the time of these transactions had failed to pay the privilege tax required of parties carrying on such business by the act of 1901; and that, this being so, they were without any status in the court. It is now insisted that this finding of that court is in the teeth of the reponses of the chancellor, upon an issue involving this very question, and that, this being so, under the well-established rule of practice, that court was without authority to go beyond that response. The issue referred to was in these words: "Were complainants engaged as real estate brokers or agents as a business at the time of the sale of the real estate over which this suit arose?" To this issue the chancellor responded, "No." The question, therefore, presented, and the only one involved in the case at this time, is: Was this response of a nature

to make it conclusive upon the court of chancery appeals, and is it equally so upon this court?

It is true that, so far as this issue might involve a matter of fact, pure and simple, the response thereto would be binding upon that court, as well as upon this. But in the present case the determination of the question rested upon the construction of certain agreements in writing which bore directly upon it. The facts were that the complainant Phillips had, at different times and from different persons owning the several tracts of land described in this bill, obtained what are called "option contracts" in the pleading, evidenced by writing, signed by the various owners of these tracts and the complainant P. L. Phillips. These agreements in writing are similar in tenor and effect, only differing in the names of the owners and the description of the several tracts covered by these several agreements. All of these agreements were in the record upon the trial of the cause, and a construction of them was necessary to the determination of the issue in question. An extract from one of these agreements is sufficient for the purpose of this opinion. It is dated the 20th of February, 1902, and opens as follows:

"An agreement made and entered into . . . by and between Phillip Williams, a resident of Fentress county, Tennessee, and P. L. Phillips, of Fentress county, Tennessee, witnesseth:

"That for and in consideration of one dollar in hand paid, the receipt of which is hereby confessed and ac-

knowledged, and also in consideration of services to be rendered by said P. L. Phillips in finding a purchaser and making a sale of the hereinafter described tract of land, we agree to sell and convey to the said P. L. Phillips, his successor or assigns, by general warranty deed, at any time within the next thirty days hereafter, the hereinafter described parcel of land, for and at the price of $2.25 per acre, payable," etc.

Then follows a description of the land. The agreement concludes with the following clause: "It is further understood and agreed that if the said P. L. Phillips shall have a *bona fide* purchaser within the said thirty days, but shall be unable to consummate a sale for the lack of abstracts or surveys, or on account of defect in deeds or title, then the said P. L. Phillips shall give written notice of the fact that he has found such *bona fide* purchaser and shall have reasonable time thereafter in which to prepare said abstract, have said surveys made, cure defects, and make the said payments herein contemplated." This agreement was signed by complainant P. L. Phillips, and Phillip Williams, the owner of the property.

On the 27th of February, 1902, the complainants in this cause entered into a written agreement, which is in the following words: "Whereas, we, S. H. Pile, P. L. Phillips, J. R. Storie, and Conatser & Case, have taken options on lands on the headwaters of Wolf river, Tennessee, which said options are taken in the name of said P. L. Phillips, but are for the use and benefit of

the other parties hereto: Now, it is agreed that whatever amounts may be realized from the sale of said land, or from any other lands obtained hereafter in like manner by said parties, over and above the price to be paid to the owners thereof, shall be divided between us equally, none of the parties hereto being allowed anything for time spent, finding a purchaser, or securing options; but the said Conatser & Case agree to furnish abstracts of title to said lands, containing their legal opinion as to the validity of the same, without charge, and that such fees as the parties on the options have agreed to pay for such abstracts, and such fees as may be hereafter received thereunder, shall go into the general fund and be equally divided among all the parties hereto."

These agreements were all operative at the time the complainants effected the sales of these several tracts of land through these defendants. Instead, however, of the titles being made of the owners of these tracts who had given these options to the defendants named in this cause, they were made direct to the parties who were in fact the ultimate purchasers. All the purchase money due under these option contracts to the owners of these lands was paid by the vendees, who took the several titles at the time the deeds were passed, and the amount in controversy in this cause is the difference between the sum or sums that the owners of these lands were to and did receive and the amount

at which these properties were sold by the complainants to the vendees.

Acts 1901, p. 200, c. 128, sec. 4, provides as follows: "That each vocation, occupation and business hereinafter named in this section is hereby declared to be a privilege, and the rate of taxation of each privilege shall be as hereinafter fixed, which privilege tax shall be paid to the county court, as provided by law for the collection of revenue." By this section the business of "real estate dealers and agents" is made a privilege, and a privilege tax of five dollars per annum is prescribed for carrying on this business "in counties outside of cities, towns, or taxing districts."

By section 14 of the act it is enacted that any and all parties, firms, and corporations "exercising any of the foregoing privileges must pay the tax as set forth in this act for the exercise of said privilege, . . . and this act shall not be so construed as to exempt any person, firm or corporation whatever, exercising any of the foregoing privileges, from the payment of the tax herein prescribed for the exercise of said privileges as herein provided. . . ." By section 16 of the same act it is "declared a misdemeanor for any person to exercise any of the privileges created by the act without first paying the tax prescribed for the exercise of the same, and that all parties so offending shall be liable to a fine of not less than $50 nor more than $500 for each day such privilege is exercised without license."

Upon this record we think the following proposition

may be safely announced, determinative of this case as against the contention of complainants and in support of the conclusion reached by the court of chancery appeals: First, that these complainants in these transactions were real estate dealers within the contemplation of the statute; second, that the construction of these various written agreements raised a question of law to be decided by the court, as contradistinguished from a jury, and for ultimate decision of this court (*Toomey v. Atyoe,* 95 Tenn., 373, 32 S. W., 254) ; and, third, it follows that, being without license at the time that the transactions occurred, under a principle frequently arising and applied by this court in cases involving this act of 1901 and similar revenue acts, complainants were without right to recover from the defendants the profits or commissions earned by them in carrying out the same.

The decree of the court of chancery appeals is therefore affirmed, and the bill of complainants is dismissed, with costs.