James Elmer HUSKEY and Alpha Smith Huskey, co-executors of the Estate of Joe E. Graves, and James Elmer Huskey and Alpha Smith Huskey, co-executors of the Estate of Nancy H. Graves, and Joe B. Graves, Individually, and Joe B. Graves, next friend of Lisa Kay Graves, a Minor, Plaintiffs–Appellants,

v.

Clarence B. CRISP and Kenneth O. Crisp, a minor, Defendants–Appellees.

Supreme Court of Tennessee, at Knoxville.

Nov. 1, 1993.

James S. MacDonald, Jenkins & Jenkins, Knoxville, for plaintiffs-appellants.

Jay Arthur Garrison, Taylor & Groover, Knoxville, for defendants-appellees.

## *OPINION*

DROWOTA, Justice.

This is an appeal from the entry of a judgment n.o.v. for the defendant Assurance Company of America (ACA) following a jury verdict for the plaintiffs; the jury found that Joe B. Graves was not a resident of his father's home, so that the exclusion clause in the uninsured motorist policy issued by ACA to his father did not apply. The Court of Appeals reversed the entry of the judgment n.o.v. and remanded the case for a new trial. Two issues are presented for our consideration: 1) whether the Court of Appeals was correct in reversing the judgment n.o.v. en-

tered in favor of ACA; and 2) assuming that the Court of Appeals was correct in reversing the judgment n.o.v., whether that Court properly remanded the case for a new trial rather than reinstating the jury verdict.

In 1984, Joe E. Graves and his wife Nancy were killed, and their daughter Lisa seriously injured, when the Volkswagen automobile in which they were riding was struck by an automobile driven by Kenneth O. Crisp in Knoxville, Tennessee. James and Alpha Huskey, the executors of the estates of Joe E. and Nancy Graves, brought a wrongful death action against Crisp; Joe B. Graves, the Graves's son, brought a tort action on behalf of his sister Lisa for her injuries. The plaintiffs served ACA, the uninsured motorist carrier for Joe E. Graves, with process pursuant to the Tennessee Uninsured Motorist Statute, T.C.A. § 56–7–1201.

After the trial court had severed the uninsured motorist claim from the tort claims, the parties eventually entered into a settlement of the tort claims in the amount of $660,000: the defendants agreed to pay to the plaintiffs the sum of $220,000 for each of the wrongful death claims, and $220,000 for the claim based on Lisa Graves's personal injuries. This arrangement left ACA with potential liability under the uninsured motorist policy.

In a motion to dismiss, and later in its answer, ACA denied liability under the uninsured motorist policy, citing the following exclusion clause in the policy: "This insurance does not apply to: ... *Bodily injury* sustained by you or any *family member* while *occupying* or struck by any vehicle owned by *you* or any *family member* which is not a covered *auto.*" (emphasis in policy). ACA pointed out that the 1970 Volkswagen was not a covered auto; it then asserted that either: 1) the Volkswagen was owned by Joe E. Graves (the deceased father); or 2) that if the Volkswagen was actually owned by Joe B. Graves (the son), then Joe B. Graves was a "family member" within the meaning of the policy. The term "family member" was defined by the policy as follows: "... a person related to you by blood, marriage or adoption who is a *resident of your household,* including a ward or foster child." (emphasis add-

ed.) Joe B. Graves submitted affidavits in opposition to the motion to dismiss stating that he was the owner of the 1970 Volkswagen; Joe B. Graves also averred that he was attending college on a full-time basis at East Tennessee State University in Johnson City at the time of the accident, and was therefore a resident of Johnson City, and not a resident of his father's household in Knoxville.

The uninsured motorist issue was first tried on May 26, 1987. At the conclusion of the evidence, ACA moved for a directed verdict, which was granted by the trial court. The trial court later, however, granted the plaintiffs' motion for a new trial.

The case was tried for the second time on January 22, 1990. At the conclusion of the evidence, ACA moved for a directed verdict; the motion was again granted by the trial court. The trial court then denied the plaintiffs' motion for a new trial, and the plaintiffs appealed.

The Court of Appeals reversed the judgment, holding that the trial court had erred because material questions of fact requiring resolution by the jury existed on both issues: whether Joe E. Graves (the deceased father) owned the Volkswagen; and whether Joe B. Graves (the son) was a "resident of the household" under the policy. The Court of Appeals remanded the case for a trial on these issues.

The case was tried for the third time on January 22, 1992. At the conclusion of the evidence, ACA moved for a directed verdict; this time, however, the trial court denied the motion and submitted the case to the jury. The jury returned a verdict in favor of the plaintiffs, specifically finding that the Volkswagen was owned by Joe B. Graves, and that Joe B. Graves was not a "resident of the household" within the meaning of the policy. The trial court entered judgment on the verdict on February 3, 1992.

On February 11, 1992, ACA moved for a judgment notwithstanding the verdict [1] pur-

suant to Rule 50.02, T.R.Civ.P., ACA also filed a separate motion for a new trial. The trial court granted the motion for a judgment n.o.v. with respect to the "residence" issue; it denied the motion for judgment n.o.v. as to the "ownership" issue. The trial court also denied the motion for a new trial.

The plaintiffs appealed to the Court of Appeals, who reiterated its holding in *Huskey v. Crisp (Huskey I)*, 1991 WL 46691 that the plaintiffs had presented sufficient evidence to send the residency issue to the jury. Although the Court held that the trial court had erred in determining, as a matter of law, that Joe B. Graves was a resident of his father's household, the Court chose to remand the cause for a fourth trial on the residency issue, instead of reinstating the judgment based on the jury verdict. Before addressing the appropriateness of the remand—the question raised by the appellants—we must determine if the Court of Appeals was correct in reversing the judgment n.o.v. entered by the trial court.

I.

The trial court apparently granted the motion for judgment n.o.v. because it believed that the term "resident" in the exclusionary clause was equivalent to the term "domicile." In oral argument on the judgment n.o.v. motion, the plaintiff's counsel admitted that Joe B. Graves was domiciled at his father's home. The following exchange then occurred:

> The Court: Mr. McDonald, do you agree under the charge I gave, which was your requested charge, that if you are a domicile at a place it must be your residence?
> Mr. McDonald [plaintiff's attorney]: Absolutely not, Your Honor ... I think his domicile was his father's home, but I don't agree with the predicate that a domicile is a residence.
> The Court: ... The key ... word in the policy is a resident. If his domicile is his father's home then his residence must be his father's home. For that reason I'm

1. Rule 50.02 does not use the term "judgment notwithstanding the verdict"; rather, it employs the term "judgment entered in accordance with the motion for directed verdict." There is no substantive difference between the terms, however, and for purposes of brevity we will refer to the trial court's ruling as a "judgment n.o.v."

going to grant the motion for judgment n.o.v. dismissing the case against the insurance company solely upon the finding that there was nothing before this jury that [would enable] a reasonable person [to] find that this young man's residence was other than his father's home.

The Court of Appeals in *Huskey v. Crisp (Huskey II)*, 1992 WL 371731 implicitly rejected the trial court's reasoning, holding that because the plaintiffs presented material evidence that Joe B. Graves in fact lived in Johnson City at the time of the accident, the issue of residence was a question of fact for the jury to determine.

 This specific exclusion clause has not, as far as our research has determined, been construed by the appellate courts of this state. Nevertheless, we believe the Court of Appeals' analysis is correct. The word "resident" is not defined in the policy, and the legal definition of the term varies with the context in which it is used. The term "residence," standing alone, may mean "actual residence" and is not necessarily synonymous with the term "domicile," or "legal residence." *Bearman v. Camatsos*, 215 Tenn. 231, 385 S.W.2d 91 (1964); *Coke v. Coke*, 560 S.W.2d 631 (Tenn.App.1977). Because an ambiguous provision in an insurance policy is to be liberally construed in favor of the insured, *Palmer v. State Farm Mut. Ins. Co.*, 614 S.W.2d 788 (Tenn.1981), the Court of Appeals was correct in refusing to equate the term "resident" in the policy with the term "domicile." Therefore, we hold, as did the Court of Appeals on two previous occasions in this case, that the plaintiffs did present legally sufficient evidence on the residency issue to submit that issue for the jury's consideration.

## II.

As to the second issue, the plaintiffs argue that because a jury has already decided that Joe B. Graves was not a resident of his father's household at the time of the accident, the Court of Appeals erred by failing to reinstate the jury verdict, which the plaintiffs note was the product of an error-free trial. The plaintiffs cite Rule 36(a), T.R.App.P., as support for its argument that an appellate

court possesses the power to order any appropriate relief on appeal.

ACA contends that the "thirteenth juror" rule requires that anytime a trial court does not approve a jury verdict, a new trial must be granted by the appellate court; ACA asserts that this rule applies even where the trial court has expressly denied the motion for new trial. ACA concludes that because the trial court here clearly did not approve the verdict, the Court of Appeals was correct in remanding the case for a new trial.

 We must reject the argument propounded by ACA. Although the "thirteenth juror" rule does require that a new trial be granted if the trial court disapproves a jury verdict, *Sherlin v. Roberson*, 551 S.W.2d 700 (Tenn.App.1976); *James E. Strates Shows, Inc. v. Jakobik*, 554 S.W.2d 613 (Tenn.1977), this rule applies only in the context of a motion for a new trial, for it is only there that the trial court has the duty to decide if the jury verdict is contrary to the weight of the evidence. Here, the trial court did not "disapprove" of the jury's verdict in the sense contemplated by the "thirteenth juror" rule. In addition to the fact that the trial court expressly denied ACA's motion for a new trial, it is clear that the court's "disapproval" of the jury's verdict was not actually based on the lack of evidence presented to the jury, (or any other valid ground for the award of a new trial), but was instead based on its interpretation of the legal term "residence" in the policy. Therefore, the trial court was not weighing evidence in its role as "thirteenth juror," and that rule does not apply to this situation.

Nor does *Holmes v. Wilson*, 551 S.W.2d 682 (Tenn.1977)—a case discussed at oral argument—lend support to ACA's argument. *Holmes* involved a construction of Rule 50.03, T.R.Civ.P., which provides, in pertinent part, as follows:

If the motion for judgment entered in accordance with a motion for directed verdict, provided for in [Rule] 50.02, is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed,

and shall specify the grounds for denying or granting the motion for a new trial ... If the motion for a new trial is thus conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered ...

The *Holmes* Court held that if the trial court, when entering a judgment n.o.v., also grants a motion for new trial in the event that the judgment n.o.v. is reversed on appeal, the appellate court is required to remand the case for a new trial absent "exceptional circumstances."

Although ACA contends that no "exceptional circumstances" exist here that would allow the reinstatement of the jury verdict, it is evident that *Holmes* does not control this situation because, as noted above, the trial court expressly denied ACA's motion for a new trial; thus, it neither conditionally granted nor denied the motion. Although *Holmes* is not controlling, we note that Rule 50.03 is mandatory, and should be followed by the trial court whenever a motion for judgment n.o.v. and a motion for a new trial are filed and the judgment n.o.v. is granted.

The rules of appellate procedure are designed to afford the courts a substantial amount of flexibility in disposing with proceedings. Rule 1, T.R.App.P., provides that the rules shall ensure the "just, *speedy*, and *inexpensive* determination of every proceeding on its merits." (emphasis added.) Moreover, Rule 36(a) confers upon the appellate courts the power to grant any "relief on the law or facts to which a party is entitled or the proceeding otherwise requires" as long as the relief does not contravene the province of the trier of fact. In light of these rules, and given the extremely protracted nature of this litigation and the inordinate amount of resources expended thereon by the parties and the judicial system, we hold that the Court of Appeals erred in remanding the case for a new trial. The judgment of the Court of Appeals is affirmed as to the judgment n.o.v. issue, and the jury verdict in favor of the plaintiffs is reinstated.

REID, C.J., and O'BRIEN and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.