Brian L. VANBEBBER

v.

Jon ROACH, et al.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

May 17, 2007 Session.

Sept. 26, 2007.

Permission to Appeal Denied by
Supreme Court March 3, 2008.

John T. Johnson, Jr. and William J. Carver, Knoxville, Tennessee, for appellant, Tennessee Farmers Mutual Insurance Company.

James S. MacDonald, Knoxville, Tennessee, for appellee, Brian L. VanBebber.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

This case involves a personal injury claim arising out of a two-vehicle collision. The dispute on appeal is between the injured plaintiff, Brian L. VanBebber, and Tennessee Farmers Mutual Insurance Company. Their disagreement pertains to whether the plaintiff is covered under the uninsured motorist provisions of his mother's policy with Tennessee Farmers. This issue was tried to a jury. The plaintiff contends that he was a resident of his mother's household at the time of the accident. The trial court held that the policy language—"resident of your household"— is ambiguous. As a consequence of this ruling, the court instructed the jury that it should liberally construe this phrase "in favor of [the plaintiff] ... and against [Tennessee Farmers]." The jury returned a verdict in favor of the plaintiff. We hold that the trial court committed error when it characterized the subject provision as ambiguous and that it further erred when it thereafter charged the jury that it

should construe this language liberally in favor of the plaintiff and against Tennessee Farmers. Because we hold that these errors more probably than not affected the judgment in this case, we vacate that judgment and remand for a new trial.

## I.

The plaintiff was injured in an automobile accident in Union County on February 12, 2002. At the time of the 2006 trial below, the plaintiff was approximately 45 years old. On the day of the accident, he was a guest passenger in a pickup truck being driven by his employer, Terry D. Collins. The Collins' vehicle was struck by a vehicle owned by the defendant, Thomas McLaughlin. It was being driven at the time by Joseph A. McBee. McBee died as a result of injuries received in the accident.

The plaintiff filed suit against (1) Jon Roach, the Personal Representative Ad Litem of McBee and (2) McLaughlin. The plaintiff secured service of process on Tennessee Farmers (1) under his own automobile insurance policy with that company[1] and (2) under his mother's policy with the same company. With respect to his claim based upon his mother's policy, he alleged that he was a resident of his mother's household at the time of the accident. The trial court severed the coverage issue. Later, the plaintiff's suit against the named defendants was settled.

Tennessee Farmers denied liability under Mrs. VanBebber's policy, arguing that the plaintiff was not a resident of her household when the accident occurred.

On the coverage issue, the plaintiff's basic thrust is twofold: first, that an individual can have more than one residence at a time, and second, that he was residing with his mother as well as his girlfriend at the time of the accident.

The plaintiff provided proof of his close relationship with his mother and his continuing connection to her residence. The record reflects that, up until 1999, the plaintiff lived in Union County with his parents except for a month or two when he resided with friends after he dropped out of high school. The plaintiff's father, Lonnie VanBebber, died in February 2000. According to the plaintiff, after his father's death, he spent every night with his mother for two or three months.

Upon his father's death, the plaintiff inherited a Model A Ford, which he kept at his mother's house. He joined the Smoky Mountain Model A Club and advised the organization to send its monthly publication to him at the post office box used by his mother. His subscription was mailed to that address up through the time of the trial. The plaintiff further noted that his Tennessee Farmers' policy, Number 4980126, listed as his address his mother's post office box. Her policy with Tennessee Farmers, Number 0481456, used the same address. Additionally, the same post office address was listed on the plaintiff's Sears credit account. When he sought employment in 2000 at a company called Sawing Systems, his application form listed the post office address. According to his testimony, his tax returns bore his mother's address. He indicated that he always spent his holidays at his mother's home.

In 1999, the plaintiff met Stacy Boardman, whom he would later marry. When they first met, Boardman owned a house on J.B. Lane in Sharps Chapel. The plaintiff would frequently stay there overnight. He testified that, if he stayed overnight with Boardman, he would leave directly from her house to go to work. The plaintiff claimed that it was his routine to go to his mother's house after work to retrieve

---

1. No dispute arose over the applicability of this policy.

clean clothes, bathe, eat dinner, perform yard work if needed, and assist his mother as necessary. According to him, he saw his mother "almost daily, every other day."

In 2001, when the plaintiff purchased a vehicle for his personal use, he listed Boardman's address on the bill of sale. He testified that, prior to the accident, he kept a ski boat parked at her residence. He asserted, however, that, at the time of the accident, he had not planned to permanently live at the J.B. Lane house because he was uncomfortable living in the backyard of Boardman's former in-laws. The plaintiff, who had divorced Boardman by the time of trial, characterized his relationship with her as "rocky," stating that they fought frequently. The plaintiff claimed that after these fights he would return to his mother's house. From his testimony, it appears that Boardman's three children by a previous marriage—ages nine, eleven, and thirteen—were a challenge to the couple's relationship. Three weeks before his accident, following a dispute with Boardman, the plaintiff was staying at his mother's house. One week immediately before the accident, however, he had returned to spending evenings with Boardman.

The address for the plaintiff listed on the accident report, apparently taken from his driver's license, is "167 J.B. Lane." According to him, when he renewed his driver's license in August 2001, he was contemplating marriage to Boardman and intended to change his address permanently. Because he was uncertain of the house number at J.B. Lane, his driver's license reflected "167" instead of Boardman's actual address of "185 J.B. Lane." His post-accident medical records at the University of Tennessee Medical Center and Patricia Neal Rehabilitation Center show the plaintiff's address as 185 J.B. Lane. He testified that Boardman had procured health insurance for him through her employer by claiming him as her "significant other."

He noted that at the time of the accident, Boardman gave the hospitals the J.B. Lane address to assure there were no coverage issues regarding his treatment.

Upon the plaintiff's marriage to Boardman ten months after the accident, the couple moved to 104 Sandy Lane in Maynardville. While the plaintiff testified at trial that none of his furniture was ever moved to Boardman's house, it was apparently at this time that he finally moved his personal television and a china cabinet into Boardman's house. Other items of furniture, as well as the Model A car and his tools, remained at his mother's house. During their relationship, Boardman was paying for two different residences, the house on J.B. Lane at Sharps Chapel and the Sandy Lane house in Maynardville. The plaintiff had no ownership interest in either. The plaintiff apparently mowed Boardman's yard on a regular basis. However, other than purchasing pizzas and such on occasion and providing Boardman with a little money upon request, he claimed to have contributed very little to the household expenses. At the time of trial, the plaintiff was living with his mother.

In an examination under oath conducted on November 19, 2002, the plaintiff testified that he was "not exactly" living with his mother at the time of the accident. He indicated that he had been staying "[o]ff and on" with Boardman for approximately three years. During the examination, the plaintiff stated that, at the time of the accident, he was spending two-thirds of his time at Boardman's residence. He testified that about half of his clothes were located at the J.B. Lane address during this period. Some nine months after the accident, the plaintiff testified—contrary to his 2006 trial testimony—that he would go directly to Boardman's house after work. He admitted that he had been plan-

ning during the relevant time frame to permanently change his address to J.B. Lane and that he received some mail at that address. However, he maintained that any plans regarding marriage and living with Boardman were never concrete.

The plaintiff's maternal aunt, Betty Vandergriff, testified that, following the death of the plaintiff's father, she stayed for two weeks at her sister's home. After this, she visited the home approximately every other day. She observed the plaintiff there most of the times when she visited. She indicated that even if his mother was away, the plaintiff was often at the residence. According to Vandergriff, once the plaintiff began spending time with Boardman, there was not a significant decline in the amount of time he spent at his mother's home. During this time, she noted that the plaintiff's mother continued to do her son's laundry and that his personal effects were not moved to Boardman's home.

The plaintiff's sister, Regina Brock, resided in a house approximately 200 feet from her mother's house. Brock stated that she was usually aware when her brother was present at their mother's residence. Brock testified that, in her opinion, the plaintiff "still lived at home," even when he began to stay over at Boardman's residence "a couple of days here, a few days there." Brock further testified that, while the plaintiff would refer to Boardman's house as "over yonder," he called his mother's residence "home."

The plaintiff's mother testified that she saw her son "about every day." Concerning the period when he was dating Boardman, Mrs. VanBebber testified that there were times her son continued to spend the night at her home. She noted that after disagreements with Boardman, the plaintiff would often return to her house for a week or two at a time. According to his mother, following the plaintiff's discharge from the rehabilitation center, he stayed with her for ten months until his marriage to Boardman.

On March 13, 2006, a jury found that the plaintiff was a resident of his mother's household on the date of the accident. He was awarded a judgment against Tennessee Farmers in the amount of $72,150. This appeal followed.

## II.

The following issues are presented for our review:

1. Whether the trial court erred in holding that the phrase "resident of your household" is ambiguous, and whether the court further erred in instructing the jury to construe this phrase against the insurer.

2. Whether the trial court erred in failing to charge the request for jury instruction tendered by Tennessee Farmers.

3. Whether the trial court erred in failing to direct a verdict in favor of Tennessee Farmers.

4. Whether the jury's finding that the plaintiff was a resident of his mother's household at the time the accident occurred was against the weight of the evidence.

5. Whether the trial court erred in denying Tennessee Farmers' motion for a new trial.

## III.

Our standard of review as to findings of fact by a jury in a civil action is limited to determining whether there is material evidence to support the verdict. *See* Tenn. R.App. 13(d). Appellate courts do not determine the credibility of witnesses or weigh evidence on appeal from a jury verdict. *See Pullen v. Textron, Inc.*, 845 S.W.2d 777, 780 (Tenn.Ct.App.1992) (citing *Crabtree Masonry Co. v. C & R Constr.,*

*Inc.,* 575 S.W.2d 4, 5 (Tenn.1978)). With respect to factual issues, a judgment based on a jury verdict will not be disturbed on appeal where the record contains material evidence supporting that verdict. *See Reynolds v. Ozark Motor Lines, Inc.,* 887 S.W.2d 822, 823 (Tenn.1994).

 Courts interpret insurance policies using the principles that guide the construction of other contracts. *Am. Justice Ins. Reciprocal v. Hutchison,* 15 S.W.3d 811, 814 (Tenn.2000). The goal is to ascertain and enforce the intent of the contracting parties. In *Tata v. Nichols,* 848 S.W.2d 649 (Tenn.1993), the Supreme Court explained the analysis to be applied when construing insurance policies:

> Insurance contracts ... should be construed so as to give effect to the intention and express language of the parties. Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured.

*Id.* at 650 (citations and quotation marks omitted). *See also Harrell v. Minn. Mut. Life Ins. Co.,* 937 S.W.2d 809, 814 (Tenn. 1996).

 Questions regarding the interpretation of written contracts involve legal rather than factual issues. *Brandt v. Bib Enters., Ltd.,* 986 S.W.2d 586, 592 (Tenn. Ct.App.1998). Furthermore, scope of coverage issues present questions of law. *Pile v. Carpenter,* 118 Tenn. 288, 99 S.W. 360, 362 (1907). Hence, on these matters, our scope of review is *de novo* on the record with no presumption of correctness as to the trial court's conclusions of law. *Rainey v. Stansell,* 836 S.W.2d 117, 118 (Tenn.Ct.App.1992).

 Courts will look to the material contained within the four corners of the instrument to ascertain its meaning as an expression of the parties' intent. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn.1975). The words of the contract should be given their usual, natural, and ordinary meaning. *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.,* 725 S.W.2d 948, 951 (Tenn.Ct.App.1986).

 In determining whether the meaning of a contract is clear or ambiguous, courts apply the following principles. The language in dispute must be examined in the context of the entire agreement. *Cocke County Bd. of Highway Commrs. v. Newport Utils. Bd.,* 690 S.W.2d 231, 237 (Tenn.1985). The language of a contract is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way. *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn.1975). "A strained construction may not be placed on the language used to find ambiguity where none exists." *Id.*

 Insurance policies are strictly construed in favor of the insured. *Sturgill v. Life Ins. Co. of Georgia,* 62 Tenn.App. 550, 465 S.W.2d 742, 744 (1970). If a contract of insurance is ambiguous and susceptible to two reasonable meanings, "the one favorable to the insured must be adopted." *Boyd v. Peoples Protective Life Ins. Co.,* 208 Tenn. 280, 345 S.W.2d 869, 872 (1961); *Sturgill,* 465 S.W.2d at 744.

### IV.

### A.

The following language of the insurance policy is relevant to all of the issues before us: "Covered Person" for uninsured motorist coverage is defined as "any family member." "Family Member" is defined as

"a person who is a *resident of your household.*" (Emphasis added.)

At trial, the sole issue presented to the jury was whether the plaintiff was a resident of his mother's household. After hearing the argument of counsel, the trial court, agreeing with the plaintiff's position, charged the jury that the phrase "resident of your household" was ambiguous and, therefore, must be construed against Tennessee Farmers. The insurer contends that this charge was a "death sentence"— one from which the defendant could not recover.

### B.

■■■ We must determine whether the phrase "resident of your household" is legally ambiguous within the context of this policy.

In 1993, in *Huskey v. Crisp,* 865 S.W.2d 451 (Tenn.1993), the Supreme Court found the policy language term "resident" to be ambiguous. *Id.* at 454. In *Huskey,* relied upon by the plaintiff in this matter, the Court noted as follows:

> The word "resident" is not defined in the policy, and the legal definition of the term varies with the context in which it is used. The term "residence," standing alone, may mean "actual residence" and is not necessarily synonymous with the term "domicile," or "legal residence." Because an ambiguous provision in an insurance policy is to be liberally construed in favor of the insured, the Court of Appeals was correct in refusing to equate the term "resident" in the policy with the term "domicile." Therefore, we hold, as did the Court of Appeals on two previous occasions in this case, that the plaintiffs did present legally sufficient evidence on the residency issue to sub-mit that issue for the jury's consideration.

*Id.* (citations omitted).

In the instant case, the issue is not whether "resident" is ambiguous but rather whether "resident of your household" is ambiguous. Tennessee Farmers contends the trial court's finding of ambiguity in the instant case is in direct conflict with *Gredig v. Tenn. Farmers Mut. Ins. Co.,* 891 S.W.2d 909 (Tenn.Ct.App.1994), and more recent cases of the appellate courts of this state.

In *Gredig,* we found as follows:

> The appellate courts of this state have clearly held that language similar to the "residing in your household" language of the instant policy is susceptible to definition. To the extent that it can be and has been defined by our appellate courts, the language is not ambiguous. In effect, the definition of the language in question, in the absence of a definition in the policy, has been supplied by case law. That has been the case since at least 1961 when *Boyd [v. Peoples Protective Life Insurance Company,* 345 S.W.2d 869] was decided.

*Gredig,* 891 S.W.2d at 914. This court noted further that "the fact that the words may be difficult to apply to a given factual situation does not make those words ambiguous." *Id.* Under the facts presented in *Gredig,* we held there was no coverage because the claimants "were not 'living together under one roof.'" *Id.* In so holding, we relied upon the Supreme Court's decision in *Boyd* which stated as follows: "The great weight of authority seems to be to the effect that a household means those living together under one roof, under one head and under the common control of one person." *Id.* at 913 (quoting *Boyd,* 345 S.W.2d at 872 (Tenn.1961)).

In *Tenn. Farmers Mut. Ins. Co. v. Sa W. Jeong,* No. E2001–00246–COA–R3–CV,

2001 WL 1268508 (Tenn.Ct.App. October 23, 2001), the Court of Appeals adhered to our basic holding in *Gredig*. The court held that "[a]pplying the rules established by case law, we find that the policy language is unambiguous, and, hence, it must be construed as written, and not in favor of either party." *Jeong*, 2001 WL 1268508, at *6.

More recently, in *Nat'l Ins. Ass'n. v. Simpson*, 155 S.W.3d 134 (Tenn.Ct.App. 2004), we again concluded that the phrase "resident of your household" is not ambiguous. *Id.* at 138–39 (indicating that the phrase "resident of your household" and similar phrases "have been construed frequently and are not ambiguous") (citing *Setters v. Permanent Gen. Assurance Corp.*, 937 S.W.2d 950, 954 (Tenn.Ct.App. 1996) and *Gredig*, 891 S.W.2d at 915). The *Simpson* court observed that such phrases are "necessarily elastic because of the numerous factual settings to which they apply." *Id.* at 139 (citing *Montgomery v. Hawkeye Sec. Ins. Co.*, 52 Mich.App. 457, 217 N.W.2d 449, 450–51 (1974); *Schehen v. North–West Ins. Co.*, 258 Or. 559, 484 P.2d 836, 838 (1971)). We further noted in *Simpson* as follows:

> Residence in a household contemplates both a relationship to a place and membership in a group. It includes the common types of close relationships, varying greatly in detail, where persons live together as a family in a closely knit group, usually because of close relationship by blood, marriage, or adoption, and deal with each other intimately, informally, and not at arm's length.
>
> Earlier definitions of "household" limited its application to groups of persons living together "under one head." However, the legal significance of *paterfamilias* has given way in modern times to a broader concept of family. The courts cannot force people to live in narrowly defined family patterns. We now recognize that "[o]ut of choice, necessity, or a sense of family responsibility, it has been common for close relatives to draw together and participate in the duties and satisfactions of a common home." Thus, the prevailing understanding of "household" today does not necessarily require the existence of a family head. For the purposes of this opinion, we, like a majority of jurisdictions, recognize a household as a group or set of persons who dwell together as a family under the same roof.
>
> Residence in a household also requires a degree of permanence and intention to remain in the household for an indefinite period of time. It connotes a settled or permanent status. Thus, a temporary visit by a relative does not make the relative a resident of the household because it is temporary and there is no melding of the family unit. Likewise, a landlord-tenant relationship or a simple roommate arrangement does not create a household.

*Simpson*, 155 S.W.3d at 139 (citations and footnotes omitted).

As can be seen, *Simpson* modified our earlier holdings to delete the "under one head" requirement. But *Simpson* continues to adhere to our holding that "resident of your household" is not ambiguous. *Simpson* discussed five nonexclusive factors to consider to determine whether an individual is a resident of the household: (1) the person's subjective or declared intent to remain in the household either permanently or for an indefinite or unlimited period of time, (2) the formality or informality of the relationship between the person and the other members of the household, (3) whether the place where the person lives is in the same house or on the same premises, (4) whether the person asserting residence in the household has another place of lodging, and (5) the age and self-suffi-

ciency of the person alleged to be a resident of the household.

*Id.* at 139–40 (citations omitted).

In view of the case law that has been developed in this state concerning the phrase "resident of your household," this court holds that the policy language at issue is not ambiguous. Accordingly, the trial court erred when it instructed the jury that the language is ambiguous and should be construed against Tennessee Farmers. We further hold that this error involved "a substantial right [that] more probably than not affected the judgment." Tenn. R.App. P. 36(b). This error, standing alone, warrants reversal and a new trial.

### C.

With respect to Tennessee Farmers' second issue pertaining to its requested special jury instruction, we hold that the trial court did not err in refusing to give the requested charge; however, we also find the court's charge to be fatally flawed.

■ A trial court should instruct the jury upon every issue of fact and theory of the case that is raised by the pleadings and is supported by the proof. *Street v. Calvert*, 541 S.W.2d 576, 584 (Tenn.1976); *Spellmeyer v. Tenn. Farmers Mut. Ins. Co.*, 879 S.W.2d 843, 846 (Tenn.Ct.App. 1993).

In the instant case, Tennessee Farmers requested the following charge:

1. Residence in a household requires a degree of permanence and an intention to remain in a household for an indefinite period of time. A temporary visit by a relative does not make the relative a resident of the household.

2. Factors you should consider in determining whether a person is a member of the household are the following:

(a) The person's subjective intent to remain in the household either permanently or for an indefinite period of time.

(b) The formality or informality of the relationship between the person and the other members of the household.

(c) Whether the place where the person lives is in the same house or on the same premises.

(d) Whether the person asserting residency in the household has another place of lodging.

(e) The age and self-sufficiency of the person alleging to be a member of the household.

(Citations omitted). The court refused the request, instead charging the jury as follows:

The term "resident of your household" is not defined in the Tennessee Farmers policy. The legal definition of the phrase varies with the context in which it is used. The term "residence," standing alone may mean "actual residence" and is not necessarily synonymous with the term "domicile" or "legal residence." Because an ambiguous provision in an insurance policy is to be liberally construed in favor of the insured, here Mr. VanBebber, and against the insurance company, here Tennessee Farmers, you are not required to equate the term "residence" in the policy with the term "domicile." Domicile is defined as the place where a person has his principal home and place of enjoyment of his fortune, which he does not expect to leave except for purposes from which when absent he seems to himself a wayfarer to which when he returns he ceases to travel. The meaning of a phrase in an insurance policy, such as the relevant phrase in this case, "resident of your ..." Mrs. Glenda VanBebber's "... household," may be given different meaning dependant on whether or not the phrase is one of inclusion, including someone for coverage; or in terms of exclusion, excluding coverage for some-

one. In this case "resident of your household," is a term of inclusion, not exclusion. In general, terms of inclusion, such as this phrase, are construed broadly to include coverage, whereas terms of exclusion should be narrowly construed. The non-exclusive factors you may consider in deciding this case, are physical presence in or absence from the household, the circumstances of any absence, prior living arrangements, property left behind, maintenance of living quarters in the household, marital status, legal emancipation, and intent to return. Residence in a household requires an intention to remain in a household for an indefinite period of time. A temporary visit by a relative does [not] [2] make the relative a resident of the household. Other factors you should consider in determining whether a person is a member of the household include the following: the person's subjective intent to remain in the household for an indefinite period of time; the formality or informality of the relationship between the person and the other members of the household; whether the place where the person lives is the same house or on the same premises; whether the person asserting residence in the household has another place of lodging, and the age and self-sufficiency of the person alleging to be a member of the household. No single factor is controlling. A person may have more than one residence at a time. One may have but [one] domicile or legal residence, but he may have two or more residences....

■ The trial court was correct in rejecting Tennessee Farmers' requested jury instruction. The requested instruction fails to recite that the five factors set forth in the proposed charge are non-exclusive. *Simpson*, 155 S.W.3d at 139 ("These factors include, *but are not limited to* ....")

(emphasis added). Because of this omission, the requested instruction is fatally flawed.

■ For another reason, the charge that was given by the trial court was also flawed. The court's charge focuses on *Huskey's* treatment of the word "resident" in the phrase "resident of your household" without really addressing the broader concept. The *Simpson* case, on the other hand, extensively and comprehensively defines the broad concept of "resident of your household." *See* 155 S.W.3d at 138–40. The latter is far more pertinent to this case than the former.

On remand, the trial court is directed to give the following instruction, which is taken essentially verbatim from *Simpson:*

The policy of automobile insurance before you defines a "Covered Person" for uninsured motorist coverage as "any family member." "Family Member" is defined in the policy to include "a person who is a resident of your household." The phrase "resident of your household" and similar phrases appear often in insurance contracts. These phrases are not ambiguous. However, courts have recognized that these phrases are necessarily elastic because of the numerous factual settings to which they apply.

Residence in a household contemplates both a relationship to a place and membership in a group. It includes the common types of close relationships, varying greatly in detail, where persons live together as a family in a closely knit group, usually because of close relationship by blood, marriage, or adoption, and deal with each other intimately, informally, and not at arm's length.

A "household" as that word is used in the phrase "resident of your household" does not necessarily require the exis-

2. Transcript omitted the word "not."

tence of a family head. A "household" is a group or set of persons who dwell together as a family under the same roof.

Residence in a household requires a degree of permanence and intention to remain in the household for an indefinite period of time. It connotes a settled or permanent status. Thus, a temporary visit by a relative does not make the relative a resident of the household because it is temporary and there is no melding of the family unit. Likewise, a landlord-tenant relationship or a simple roommate arrangement does not create a household.

Over the years, the courts have examined a number of factors to determine whether a person is a resident of a household. These factors include, but are not limited to: (1) the person's subjective or declared intent to remain in the household either permanently or for an indefinite or unlimited period of time, (2) the formality or informality of the relationship between the person and the other members of the household, (3) whether the place where the person lives is in the same house or on the same premises, (4) whether the person asserting residence in the household has another place of lodging, and (5) the age and self-sufficiency of the person alleged to be a resident of the household.

In addition to these specific instructions on the phrase at issue, the trial court should give such additional instructions pertaining to this coverage issue as may be implicated by Mrs. VanBebber's policy and the other facts of this case.

## V.

The remaining three issues raised by Tennessee Farmers pertain to whether there was material evidence from which the jury could have concluded that the plaintiff was a "resident of [his mother's] household." We hold that there was evi-dence favorable to the plaintiff's theory which was sufficient to sustain a verdict for the plaintiff had the jury been correctly charged with respect to the meaning and application of the phrase "resident of your household." These three issues are found adverse to Tennessee Farmers.

## VI.

For the foregoing reasons, the decision of the trial court is vacated and this cause is remanded for a new trial. Costs of this appeal are taxed against the appellee, Brian L. VanBebber.