FILED
08/22/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 1, 2024 Session

**CALVIN BRYANT, III v. STATE OF TENNESSEE**

**Appeal from the Tennessee Claims Commission (Middle Division)**
**No. 0546-GL-20-0503956-001     James A. Haltom, Commissioner**

_____

**No. M2023-00774-COA-R3-CV**
_____

State employee received proton beam radiation therapy for prostate cancer. Insurance company denied authorization of the treatment as "investigational" and not "medically necessary" pursuant to the insurance plan and its medical policy. After exhausting administrative remedies, the employee submitted an appeal to the Tennessee Claims Commission, alleging breach of contract. The Claims Commission found that the treatment was not a covered expense, granting summary judgment in favor of the State. We now affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JEFFREY USMAN, J., joined.

Timothy J. Rozelle, Northridge, California; Hudson T. Ellis and Kaci D. Garrabrant, Chattanooga, Tennessee, for the appellant, Calvin Bryant, III.

Jonathan Skrmetti, Attorney General and Reporter; Mary Elizabeth McCullohs, Senior Assistant Attorney General, for the appellee, State of Tennessee, Tennessee Claims Commission.

**OPINION**

**I.      BACKGROUND**

In July 2018, Calvin Bryant, III ("Employee"), a 51-year-old man, was diagnosed with prostate cancer. At that time, he was employed by the State of Tennessee, which provides health care benefits for its state employees under the State of Tennessee Comprehensive Medical and Hospitalization Program, a group employee welfare benefit

plan ("the Plan"). The Plan was administered in relevant part by BlueCross BlueShield of Tennessee ("BCBST"). Employee sought treatment for prostate cancer through Provision CARES Proton Therapy Center ("Provision") in Nashville, Tennessee. His team of providers determined that proton beam radiation therapy ("PBRT") was the best course of treatment. He received such treatment from December 1, 2018, through January 31, 2019.

As pertinent to this appeal, Provision sent a request on Employee's behalf to BCBST for prior authorization of the PBRT treatment under the Plan. BCBST denied the request for prior authorization by letter, dated September 11, 2018, which provided that it found the requested PBRT "investigational" as treatment for Employee's prostate cancer. On September 13, Dr. James R. Gray, the Medical Director of Provision, submitted an appeal. Dr. Gray noted that, based on Employee's specific disease characteristics, the likely success rate of PBRT was greater than that for Intensity-Modulated Radiation Therapy ("IMRT") or conventional radiotherapy due to "superior clinical outcomes" and "superior target coverage." Dr. Gray included several clinical studies demonstrating the efficacy of the requested treatment. The appeal was denied, by letter dated September 26, which repeated the same rationale included in the original denial letter.

On December 11, 2018, Employee submitted his own appeal, explaining that the requested PBRT was not investigational, had been generally recognized in the medical community as an effective and appropriate treatment for prostate cancer, and had also been approved by the Federal Drug Administration in 1997. He further noted that other BCBST affiliates, as well as Medicare covered such treatment for prostate cancer. The appeal was again denied, by letter dated January 10, 2019.

Employee submitted a second-level appeal on May 3, 2019, citing the Tennessee Legislature's passage of the Proton Therapy Access Act, which now specifically requires the Plan to extend coverage for PBRT as an approved cancer treatment for prostate cancer.[1] BCBST met on January 9 to discuss the appeal but issued a denial, by letter dated July 12.

Having exhausted all administrative appeals, Employee initiated this action on August 22, 2021, by submitting a claim to the Tennessee Division of Claims and Risk Management pursuant to Tennessee Code Annotated section 9-8-307, alleging breach of contract against the State of Tennessee based upon the improper denial of benefits under the Plan. The claim was transferred to the Claims Commission of the State of Tennessee, Middle Division on September 2, 2021. Employee filed his formal complaint on September 27, prompting the filing of cross motions for summary judgment. A hearing was held before Commissioner James A. Haltom on February 23, 2023, after which Commissioner Haltom granted summary judgment in favor of the State. This timely appeal followed.

---

[1] The Proton Therapy Access Act is codified at Tennessee Code Annotated section 56-7-2327. The provision became effective on January 1, 2020, and again on April 17, 2023, following a brief repeal.

## II.     ISSUE

The dispositive issue on appeal is whether the Claims Commission correctly granted the State's motion for summary judgment on Employee's claim for benefits.[2]

## III.     STANDARD OF REVIEW

Pursuant to Tennessee Code Annotated section 9-8-403(a)(1), any appeal from a decision of the Claims Commission to this Court is made pursuant to the Tennessee Rules of Appellate Procedure. Under Tennessee Rule of Appellate Procedure 13(d), we review this case de novo upon the record with a presumption of correctness for the Claims Commission's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). However, this presumption does not extend to conclusions of law. We review the Claims Commission's grant of summary judgment de novo with no presumption of correctness. *Turner v. State*, 184 S.W.3d 701, 704 (Tenn. Ct. App. 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

## IV.     DISCUSSION

To prevail on his breach of contract claim, Employee was required to establish (1) the existence of a valid and enforceable insurance contract; (2) a deficiency in the performance of the contract amounting to a breach; (3) and damages caused by the breach. *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). The Claims Commission determined that Employee could not establish a breach of the applicable contract based upon the language of BCBST's medical policy, which is specifically referenced in the Plan.

In determining whether to uphold a grant of summary judgment under similar circumstances, a panel of this court stated:

> The legal principles governing the interpretation of insurance policies are
> well settled:

---

[2] This action was presented on appeal concurrently with a related case involving BCBST's denial of PBRT treatment for tongue cancer. *See Clarke v. State*, No. M2023-00776-COA-R3-CV, 2025 WL 469754, *at 10 (Tenn. Ct. App. Feb. 12, 2025). A panel of this court upheld the Claim Commission's grant of summary judgment in the State's favor, finding that the State established that the requested PBRT was not a covered expense under the Plan. *Id.*

> "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." *Blaylock & Brown Construction, Inc. v. AIU Insurance Co.*, 796 S.W.2d 146, 149 (Tenn. App. 1990). Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. *See e.g., Moss v. Golden Rule Life Insurance Co.*, 724 S.W.2d 367, 368 (Tenn. App. 1986). Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. *Allstate Insurance Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991).
>
> *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). Nevertheless, "the fact that the words may be difficult to apply to a given factual situation does not make those words ambiguous[,]" and "[a] strained construction may not be placed on the language used to find ambiguity where none exists." *VanBebber v. Roach*, 252 S.W.3d 279, 284, 286 (Tenn. Ct. App. 2007) (first quoting *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 914 (Tenn. Ct. App. 1994); and then quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)).

*Clarke v. State*, No. M2023-00776-COA-R3-CV, 2025 WL 469754, at *4 (Tenn. Ct. App. Feb. 12, 2025).

The State agreed through the Plan to pay certain percentages of Employee's "Covered Expenses" as determined by BCBST's policies and guidelines. The 2018 and 2019 Plans defined a Covered Expense as "the maximum allowable, medically or clinically necessary incurred expenses [including] surgical and medical care expenses required for diagnosis and treatment of injury or illness." In accordance with Section 13.01 of the Plan:

> All medical and mental health and substance abuse services, treatment and expenses will be considered covered expenses pursuant to this plan if:
>
> (A)    They are listed in Sections 13.02 or 13.03;
>
> (B)    They are not excluded from coverage under Section 13.04;
>
> (C)    They are determined to be medically necessary and/or clinically necessary by the claims administrator;
>
> (D)    Are rendered by a participating provider or specialist or facility in the network or a nonparticipating provider or specialist or facility as provided in

- 4 -

an applicable section and/or attachment herein;

(E)     Are consistent with plan policies and guidelines; and

(F)     Required by applicable state or federal laws or regulations.

Section 1.31 defines "medically necessary" or "clinically necessary" as follows:

Medically necessary or clinically necessary shall mean services or supplies, which are determined by a physician to be essential to health and are:

(A)     Provided for the diagnosis or care and treatment of a medical, mental health/substance use or surgical condition;

(B)     Appropriate and necessary for the symptoms, diagnosis or treatment of a medical condition;

(C)     Within standards of medical practice recognized within the local medical community;

(D)     Not primarily for the convenience of the covered person, nor the covered person's family, physician or another provider; and

(E)     Performed in the most appropriate, cost effective and safe setting or manner appropriate to treat the covered person's medical condition. *The fact that a physician has prescribed, performed, ordered, recommended or approved a service or treatment does not, in and of itself, make it medically necessary and appropriate. The claims administrator will determine if an expense is medically necessary and/or clinically necessary.*

(Emphasis added.).  Section 13.02(K) includes "[c]harges for chemotherapy and radiation therapy when medically necessary as determined by the claims administrator" as covered expenses.  Section 13.04(A)(25) excludes from coverage "[e]xperimental/investigational medical or surgical procedures and prescription drugs as initially determined by the claims administrator to not yet be recognized as acceptable medical practice or which require, but have not received, approval by a federal or other governmental agency."

The BCBST medical policy ("Policy") at issue, effective since 2014 and last reviewed in 2019, defines PBRT treatment as follows:

[PBRT] is a type of particulate radiation therapy that differs from conventional electromagnetic and/or photon radiation therapy.  The use of protons (or helium ions) is produced by an accelerator (cyclotron,

- 5 -

synchrotron, synchrocyclotron, or linear).  This type of radiation is unique because it allows for minimal scattering as particulate beams pass through tissue and disposes ionizing energy at precise depths (i.e., the Bragg peak).  This results in minimizing tissue damage around the area.  This type of therapy requires accurate localization of tumor and precise, reproducible positioning of the individual.  During the procedure, the individual must be completely immobilized.

The Policy then specifically provides that such treatment for prostate cancer is considered "investigational."  The Policy notes that "[i]f there is a conflict between the [Policy] and [the Plan], the express terms of [the Plan] will govern."

Employee argues on appeal that the PBRT did not qualify as "investigational" under the terms and conditions of the Plan, which specifically approves the use of radiation therapy.  He professes that PBRT is recognized as an acceptable medical practice and has received approval by a federal or other governmental agency in accordance with Section 13.04(A)(25) of the Plan.  He asserts that BCBST's attempt to impose additional requirements through its internal medical policy was unreasonable and should be rejected.

As previously noted, a panel of this court considered a similar case in which a state employee was denied coverage for PBRT in accordance with the Plan's policy.  We stated,

> We certainly do not contest that the PBRT policy states that in the event of a conflict in their language, the Plan's express terms would control.  We do not, however, find any conflict in the plain language of the two documents. First, the Plan makes clear that the guidance within its policies is an important consideration in determining whether a treatment is a covered expense; Section 13.01(E) of the Plan specifically provides that only procedures consistent with BCBST policies are covered.  And, as relevant, Section 13.04(A)(25) of the Plan excludes coverage for medical services that are investigational, which it defines as those procedures "determined by the claims administrator to not yet be recognized as acceptable medical practice[.]"  The PBRT policy does not offer a contrary definition of investigational.  Instead, it lists those types and locations of cancer for which, as of the PBRT policy's most recent review date, April 13, 2017, BCBST determined PBRT to be investigational and those for which it did not. Rather than contradicting the Plan's description of investigational treatments, this delineation serves to provide examples of circumstances where PBRT would or would not be excluded as investigational.  In this way, the PBRT policy expounds on Section 13.04(A)(25)'s limitation of coverage, it does not expand the limitation.  *See Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1210 (9th Cir. 2017) (finding a policy to be consistent with an insurance plan so long as it "neither adds to nor contradicts" the

- 6 -

plan's existing terms (citation omitted)). Thus, the language of the Plan requires the application of the PBRT policy and the language of the PBRT policy does not prevent its application.

Moreover, Appellant's argument is based on the premise that her treatment would not have been excluded as investigational under the definition provided in Section 13.04(A)(25). Yet this theory fails to consider key language included in the Plan. Specifically, Section 13.04(A)(25)'s description of excluded investigational treatments provides that whether a service is recognized as acceptable medical practice is to be determined by the claims administrator—in this case, BCBST. Similar language, providing that the question of a treatment's medical necessity is to be determined by BCBST, is included in Section 13.02(K)'s description of covered radiation therapies, Section 13.01(C)'s requirement that a covered expense be deemed medically necessary, and Section 1.32(E)'s definition of medically necessary services.

*Clarke*, 2025 WL 469754, at *7–8. As in *Clarke*, Employee presented a wealth of information arguing that the requested PBRT should not be considered investigational and has become a widely accepted treatment for prostate cancer, as recognized and required by our own legislature in Section 56-7-2327, effective January 1, 2020. In rejecting such evidence, we stated, "[t]he PBRT policy simply does not conflict with Section 13.04(A)(25)'s description of an investigational treatment." *Id.* at *9. Here, the policy, reviewed again in 2019, clearly identified the requested PBRT for treatment of prostate cancer as investigational, thereby establishing that it was not a covered benefit *at the time* of Employee's need for treatment, from December 1, 2018, through January 31, 2019. Accordingly, Employee's evidence at the summary judgment state was insufficient to establish that the denial of benefits was a breach of the insurance contract.

## V.    CONCLUSION

For the reasons stated above, we affirm the summary judgment dismissal of the action and remand for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Calvin Bryant, III.

_____
JOHN W. MCCLARTY, JUDGE