# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 13, 2012 Session

## KNOX COUNTY ELECTION COMMISSION v. SHELLEY BREEDING

**Appeal from the Chancery Court for Knox County**
**No. 182753-1      W. Frank Brown, III, Chancellor**

---

**No. E2012-01094-COA-R3-CV-FILED-JUNE 14, 2012**

---

This case addresses the issue of whether an announced, and otherwise qualified, candidate for the District 89 (Knox County) seat in the State House of Representatives satisfies the residency requirement to run in the Democratic primary on August 2, 2012. The trial court held that she was not eligible to run because the court found that she was a resident of Anderson County. She appeals. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Billy J. Stokes, Jon M. Cope, and Hudson T. Ellis, Knoxville, Tennessee, for the appellant, Shelley Breeding.

Joseph G. Jarret, Knox County Law Director, Knoxville, Tennessee, for the appellee, Knox County Election Commission.

James G. Stranch, III, J. Gerard Stranch, IV, and Michael J. Wall, Nashville, Tennessee, for the amicus curiae, Tennessee Democratic Party.

## OPINION

### I.

Shelley Breeding ("the Candidate") filed a nominating petition with the Knox County Election Commission seeking to become a candidate for the District 89 seat in State House

of Representatives in the Democratic primary to be held in August 2012. District 89 is solely within Knox County. Her petition fully qualifies her as a candidate provided she meets the requirement of Article II, Section 9 of the Tennessee Constitution, that she be "a resident in the county [s]he represents one year, immediately preceding the election." The Knox County Administrator of Elections, Cliff Rodgers ("the Administrator"), telephoned the Candidate and informed her that she might not be qualified to be a candidate and that she might not be entitled to vote in Knox County because she may, in fact, reside in Anderson County. The Candidate informed the Administrator that his predecessor had determined that she lives in Knox County. The Administrator requested an opinion from Mark Goins, the Tennessee Coordinator of Elections ("the Coordinator"), as to whether the Candidate met the residence requirement for qualification. Based upon information furnished to him by the parties, the Coordinator "indicated that Ms. Breeding was a resident of Anderson County" but he advised the Administrator to file this declaratory judgment action. The parties stipulated numerous facts and the authenticity and admissibility[1] of several exhibits. In addition, they stipulated, in effect, that, were the Candidate to be called to testify in person, her testimony would be as recited in the parties' stipulation. There was no oral testimony. The trial court held that the Candidate is a resident of Anderson County. The Candidate appeals. We expedited the appeal at the Candidate's request.

## II.

The Candidate lives in a house she and her husband, John Payne, built sometime after February 2, 2007.[2] It is located on lot 11 in the Elizabeth Downs subdivision. The house is situated to the rear of the lot with the driveway running from the house to a cul-de-sac onto which the lot fronts. The cul-de-sac and the street to which it connects are situated in Knox County. Her mail box is in Knox County at or near the cul-de-sac. Her mailing address is 3805 Elizabeth Downs, Knoxville, Tennessee, 37931.

The 2007 deed[3] to Ms. Breeding and her husband states that lot 11 is located partially in Anderson County and partially in Knox County. The deed incorporates a "final plat" of the subdivision. The plat shows the Knox Count/Anderson County line traversing the front of the Candidate's lot, near the cul-de-sac. As previously noted, the house is situated to the rear of the lot. The plat contains the following statement in the surveyor's notes:

---

[1]The parties' stipulation "reserve[d] the right to object to any stipulated exhibit on the grounds of relevance or any other objection under the Tennessee Rules of Evidence." None of the exhibits were objected to at the trial court level, and we have considered all of them.

[2]They purchased their lot on or about February 2, 2007.

[3]The deed was recorded in both Anderson County and Knox County.

> The Surveyor has made no attempt to locate the Anderson County - Knox County Boundary Line and the line shown hereon was provided by others and is approximate only.

If the county line as drawn on the plat is correct, or approximately so, the Candidate's house is located in Anderson County. A licensed surveyor reviewed the plat for the Candidate and addressed the above disclaimer. He explained that it is customary for surveyors to approximate the location of county lines; he stated that it would cost tens of thousands of dollars to recreate the lines according to acceptable surveying standards. The surveyor offered opinions in letter form that the Candidate's house "may" sit on the county line and that it is "possible" the house is in Knox County.

The Candidate's real property taxes are paid by the mortgage holder to Anderson County. The taxes are based upon an assessed value of $55,400 for the land and $242,900 for the improvements. After receiving the telephone call from the Administrator, the Candidate attempted to have Knox County assess and collect real property taxes. Thus far, her efforts in this regard have been unsuccessful.

The record includes information about the location of the county line from several maps. One is the Knox County Geographic Information System ("the KGIS map"). It shows the Knox County/Anderson County line running across the front of the lot. It places the house entirely within Anderson County. The county line, as reflected on the KGIS map, is based upon 1985 property map information. The KGIS map is accessible through a website. The website advises users that "[t]he geographic positioning of the Knox County boundary does not meet formal map accuracy standards." The meaning of the language "formal map accuracy standards" is not addressed in the record before us. The KGIS map also carries a disclaimer of any warranty of accuracy and states that "[a]ny user of this map product accepts the same AS IS, WITH ALL FAULTS, and assumes all responsibility for the use thereof . . ." (Capitalization in original.)

The state tax assessor map, which is included in the same exhibit as the KGIS map, also depicts the county line running across the front of the Candidate's yard, with the house entirely within Anderson County. The record contains no information as to the accuracy of the state tax assessor map or the method by which it was prepared. The trial court conducted its own research as to the weight to be given to the state tax assessor map, and found, among other things, that: (1) the state board of equalization has the jurisdiction to determine the location of county boundaries, *see* Tenn. Code Ann. § 5-2-114 (2011); (2) the board's determination is final and binding subject to judicial review and reversal, *see* Tenn. Code Ann. § 5-2-117 (2011); (3) where a parcel of property is located in two counties, the board of equalization must determine the proper location of the boundary and the amount of

-3-

property that is in each county, *see* Tenn. Code Ann. § 5-2-115 (2011); and (4) the state property assessor must prepare and file maps with the register of deeds of the several counties that reflect the county boundary lines as determined by the board of equalization. *See* Tenn. Code Ann. § 67-5-806 (2011).

The State of Tennessee GIS Services map, which is accessible through the Tennessee.gov website, shows the county line crossing the front yard between the cul-de-sac and the house. According to the State GIS map, the house is situated entirely in Anderson County. Although there is no evidence in the record as to the accuracy of the map and how it was prepared, we take judicial notice that, as stated online in the "FAQs," or answers to frequently asked questions, the map was prepared to "support the business functions of State and local government." *See* Tenn. R. Evid. 201(b)(c)(may take judicial notice of facts not subject to reasonable dispute and capable of accurate and ready determination).

The Candidate produced two maps from online resources. One is a "Bing"[4] map and the other is a National Geographic map which is nothing more than a reproduction of the Bing map.[5] There is no information in the record as to the accuracy of these maps or how they are generated. Both maps are oriented so that the user is looking at the property at an angle that makes the maps hard to read and understand. Both maps appear to show a faint, broken line crossing the property at or near the front of the house. The Candidate argues that the broken line represents the county line.

There is abundant evidence in the record of the Candidate's many connections to Knox County and her lack of connections to Anderson County, other than the possible location of her house in, and the payment of property taxes to, that county. She works in Knox County; her mail is delivered to a mailbox in Knox County; the vehicles of her and her husband are registered in Knox County; and she has, until now, voted in Knox County. She served on a jury in Knox County in April 2012. She has volunteered in several community and charitable events associated with Knox County. The trial court did not discount the Candidate's intention to be a Knox County resident or her belief that she is a Knox County resident. However, the trial court made a finding of fact, based on the evidence presented by stipulation, that she "is a resident of Anderson County."

---

[4]"Bing" is a computer search engine.

[5]The Candidate has asked us to consider another "screen" shot of the maps by judicial notice. The motion was not opposed. Accordingly, it is granted.

III.

Although the Candidate raises numerous issues, we find that the *factual* question of whether the Candidate resides in Knox County to be the dispositive issue in this expedited appeal. Accordingly, that issue will be our focus.

IV.

A trial court's factual determinations made without a jury are reviewed

> de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Questions of law, including issues of statutory interpretation, are reviewed de novo with no presumption of correctness.

*In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010)(case citations omitted). The Candidate contends that, since there was no oral testimony, the presumption of correctness normally accorded to factual findings by Tenn. R. App. P. 13(d) does not apply. The Candidate is mistaken; the lack of oral testimony affects only the degree of deference that we show to the trial court's evaluation of testimony as we explained in *Rivers v. Northwest Tennessee Human Resource Agency*, No. W2009-01454-COA-R3-CV, 2010 WL 1539838 at *4-5 (Tenn. Ct. App. W.S., filed April 19, 2010):

> Since this case was tried by the trial court sitting without a jury, we review the trial court's findings of fact *de novo* affording [sic][6] a presumption of correctness unless the evidence preponderates to the contrary. . . .
>
> We note the level of deference accorded to the trial court's determinations regarding the credibility of the witnesses:
>
> > When the resolution of the issues in a case depends upon the truthfulness of witnesses, the fact-finder, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. However, when the

---

[6]We believe the proper word is "according."

issues involve expert medical testimony that is contained in the record by deposition, determination of the weight and credibility of the evidence necessarily must be drawn from the contents of the depositions, and the reviewing court may draw its own conclusions with regard to those issues.

Thus, we accord great deference to the trial court's assessment of the testimony of witnesses who testified in open court. As to the deposition testimony of the experts in this case, the appellate court may draw its own conclusions on the witnesses' credibility.

*Id*. (citations and internal quotation marks and brackets omitted). Thus, the presumption of correctness is still attached to the trial court's findings of fact; but our review – looking for the preponderance of the evidence – is not tempered by credibility determinations with respect to oral testimony since there was no such testimony in this case.

V.

Before we reach what we have determined to be the dispositive issue, we find it necessary to comment on a couple of the Candidate's arguments. The Candidate contends that the trial court erred in placing the burden of proof on her. We agree, but we do not find that this argument changes the result in this case. In ***Jones v. United Propane Gas, Inc.***, No E2009-00364-COA-R3-CV, 2009 WL 5083476 at * 12-13 (Tenn. Ct. App. E.S., filed Dec. 28, 2009) we held that the plaintiff in a declaratory judgment action has the burden of proving what he, she or it asks to be declared. We relied upon and quoted at length from the Supreme Court case of ***Blake v. Plus Mark, Inc.***, 952 S.W.2d 413 (Tenn. 1997) for the proposition that the burden of proof does not change just because the plaintiff is attempting to prove a negative - in this case that the Candidate does not reside in Knox County. However, in ***Jones***, we ultimately affirmed the trial court because we found that the evidence did not preponderate against the trial court's findings. *Id*. at 13. We must take the same approach in the present case.

We also note the Candidate's contention that the trial court followed a bright-line rule of equating residence with the "footprint" of the house. We are not aware that the court used the term "footprint" in its opinion and order. Since the trial court ultimately treated the location of the Candidate's residence as a question of fact, we do not agree that the trial court

established a bright-line rule and we do not intend our holding to be an endorsement of any bright-line rule.

We now consider whether the evidence preponderates against the trial court's factual determination that the Candidate is a resident of Anderson County and not of Knox County. The issue of where a person resides is a question of fact. *Id.* at *2 (*citing **Huskey v. Crisp***, 865 S.W.2d 451, 454 (Tenn. 1993)). The deed by which the Candidate and her husband acquired the property incorporates a plat which places the house in Anderson County. Three governmental maps place the house in Anderson County. We are aware that the KGIS map is accompanied by a disclaimer and that it states "[t]he geographic positioning of the Knox County boundary does not meet formal map accuracy standards." However, there is no such disclaimer in the state GIS map or the state tax assessor map, both of which are consistent with the KGIS map in that they reflect the Candidate's house is situated completely inside Anderson County and outside Knox County. The State GIS map is – at least according to the stated purpose for making the map available through the state website – intended to support the business of local government which would include the election commission. The tax assessor's map is consistent with an obligation to pay real property taxes to Anderson County. The Candidate paid real property taxes solely to Anderson County until the Administrator called her and questioned her qualifications. Only then did she seek to pay property taxes to Knox County. These facts show by a preponderance of the evidence (1) that the Candidate's house is situated entirely within Anderson County and (2) that she is a "resident" of Anderson County and not a resident of Knox County.

The Candidate wants to challenge the maps, but she has not produced any *credible* evidence that the line is other than as reflected on the plat and the government maps. The surveyor's statement as to what "may" be or what is "possible" is no evidence at all. The Bing map, at best, reflects that the line may cross the front porch. At worst, the angle of view of the faint broken line merely creates an illusion that the line crosses the front of the house. Moreover, there is no evidence in the record to allow any assessment of the accuracy of the Bing map.

We hold that the evidence does not preponderate against the trial court's ultimate finding that the Candidate is a resident of Anderson County and not a resident of Knox County. The fact that the trial court erroneously assigned the burden of proof to the Candidate does not change the result. It does not change the fact that the evidence does not preponderate against the trial court's findings.

We have considered other arguments advanced by the Candidate, including that the "curtilage" places her in Knox County. The curtilage argument comes from annexation cases where it is clear that a person should be able to challenge annexation of land that borders his

or her home. It is not applicable to this case. We have likewise considered the brief filed by the amicus curiae and find nothing there that persuades us there is reversible error in the judgment entered by the trial court.

## VI.

In summary, when the evidence before us is viewed in the light of the state constitutional language – "resident in the county" – and the statutory test for residence found at Tenn. Code Ann. § 2-2-122 (Supp. 2011), we conclude that the evidence does not preponderate against the trial court's ultimate determination that the Candidate is not a resident of Knox County.

## VII.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Shelley Breeding. This matter is remanded to the trial court, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE